James A. Sonne (CA Bar No. 250759)
Harvard Law School Religious Freedom Clinic
1525 Massachusetts Avenue, Griswold 405
Cambridge, MA 02138
Telephone: (650) 391-8788
Email: jsonne@law.harvard.edu

Zeba A. Huq (CA Bar No. 261440)
Stanford Law School Religious Liberty Clinic
559 Nathan Abbott Way
Stanford, CA 94305
Telephone: (650) 723-2465
Facsimile: (650) 725-0253
Email: zhuq@law.stanford.edu

Wendy Musell (CA Bar No. 203507)
The Law Offices of Wendy Musell
180 Grand Ave
Suite 1300
Oakland, CA 94612
Phone: (510) 270-2252
Facsimile: (510) 228-1391
Email: wmusell@wendymuselllaw.com

Attorneys for Plaintiff Brianna Bolden-Hardge

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIANNA BOLDEN-HARDGE,<br><br>Plaintiff,<br><br>v.<br><br>OFFICE OF THE CALIFORNIA STATE CONTROLLER and BETTY T. YEE in her official capacity as California State Controller,<br><br>Defendants. | No.<br><br>**COMPLAINT FOR DAMAGES, DECLARATORY, AND INJUNCTIVE RELIEF**<br><br>1. Violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. Sec. 2000e, *et seq.*)<br>2. Violation of the California Fair Employment and Housing Act (Cal. Gov't Code Sec. 12940, *et seq.*)<br>3. Violation of the First Amendment to the U.S. Constitution<br>4. Violation of Article I of the California Constitution<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Brianna Bolden-Hardge alleges as follows:

**INTRODUCTION**

1. This case involves a paradigmatic violation of legal protections for religious freedom and accommodation in the public workplace. Specifically, a state-employer defendant rescinded a job offer it made to the plaintiff simply because, in accordance with her religious beliefs as a Jehovah's Witness, the plaintiff asked to condition her signing of a loyalty oath on an accommodation that would allow her to indicate in such signing that her first duty is to God. And all this despite the fact other public employers for which the plaintiff has worked—before and since—have hired her without insisting on exclusive loyalty to the state. Because the defendant's intransigence violates the First Amendment and a host of other federal and state laws, this action follows.

2. Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and the California Fair Employment and Housing Act (FEHA), Cal. Gov't Code § 12940, broadly forbid employers from refusing job opportunities because of an applicant's religious beliefs. What's more, in the face of a conflict between those beliefs and a job requirement, those laws also require the employer to accommodate the would-be employee's beliefs absent proof of undue hardship.

3. When the employer is a government entity, the Free Exercise Clause of the First Amendment to the United States Constitution and Article I, Section 4 of the California Constitution further forbid a public employer from substantially burdening a job applicant's religious exercise absent a constitutionally valid defense. And the Free Speech Clauses of both the federal and state constitutions similarly condemn compelled speech in violation of one's faith.

4. These broad protections notwithstanding, after Plaintiff Brianna Bolden-Hardge accepted an offer to work for the California State Controller's Office (or SCO) in its payroll department, the SCO insisted she swear a loyalty oath that violated her beliefs as a Jehovah's Witness that her first duty is to God and, accordingly, she could never take up arms for the state—despite her expressed willingness to sign the oath with a mere notation that her signing was subject to these beliefs.

5. Rather than accommodate Bolden-Hardge's sincerely held religious beliefs—which are shared by millions around the globe and well known in the law through the landmark pledge-of-

allegiance ruling in *West Virginia State Board of Education v. Barnette*, 319 U.S. 624 (1943), among other cases—the SCO rescinded her job offer and reposted the position.

6. Moreover, and strikingly, the SCO's rescission of Bolden-Hardge's job offer contrasted with the lack of any such absolute insistence on this same loyalty oath by other state agencies in California—including those Bolden-Hardge has in fact worked for.

7. The SCO's refusal to accommodate Bolden-Hardge likewise contradicts then-Governor Schwarzenegger's assurance in vetoing an express religious exemption to state loyalty-oath requirements for the stated reason that such an express exemption was "unnecessary" because "[e]xisting law already requires public employers, including the State of California, to accommodate an employee whose sincerely held religious beliefs conflict with an employment requirement." Veto Statement, S.B. 115, Cal. Leg., 2009-2010 Reg. Sess. (Cal. 2009).

8. For these reasons and others detailed below, Bolden-Hardge seeks a declaratory judgment, equitable relief, and damages to vindicate her constitutional and statutory rights.

**PARTIES**

9. Plaintiff Brianna Bolden-Hardge is and at all relevant times has been a resident of Sacramento County in the State of California.

10. Defendant California State Controller's Office is and at all relevant times has been an agency of the State of California.

11. Defendant Betty T. Yee, who is sued in her official capacity, is and since 2015 has been the State Controller of California. In this role, Yee resides in Sacramento and is responsible for all operations, policies, and procedures of the State Controller's Office. All allegations against the SCO herein therefore also apply to Yee to the extent provided by law—and vice-versa.

**JURISDICTION AND VENUE**

12. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 (federal-question jurisdiction) and 1367 (supplemental jurisdiction over state-law claims), as well as 42 U.S.C. § 1983 (jurisdiction over claims challenging the deprivation of federal constitutional rights).

13. Venue is proper in this district under 28 U.S.C. § 1391(b) because the State Controller's Office is a state government entity that maintains a principal place of business in this district

(Sacramento), all defendants reside in California, and a substantial part of the events giving rise to this action took place here. The decision to refuse to hire Bolden-Hardge occurred in Sacramento County, California, and the records relevant to that decision are maintained and administered there.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

14. All conditions precedent to filing claims under Title VII and FEHA have been performed or have occurred. In particular, Bolden-Hardge filed a timely charge of discrimination with the U.S. Equal Employment Opportunity Commission (EEOC) on January 23, 2018; the California Department of Fair Employment and Housing issued a right-to-sue notice on April 9, 2018; and the EEOC issued a right-to-sue notice on July 21, 2020.

15. This case is brought within 90 days of receipt of the EEOC notice on July 24, 2020 (by counsel) and July 25, 2020 (by Bolden-Hardge).

16. Plaintiff has fully exhausted her administrative remedies and is entitled to file in the district court. This Complaint is filed within the appropriate time.

## STATEMENT OF FACTS

17. Brianna Bolden-Hardge, 31, is a life-long Californian and working mother of two.

18. Bolden-Hardge is also a devout Jehovah's Witness—a religion with adherents across the globe, including an estimated 1.3 million in the United States.

19. Consistent with the religious beliefs of other Jehovah's Witnesses, Bolden-Hardge has come to sincerely believe that her faith forbids her from (1) swearing primary allegiance to any human government and, correspondingly, (2) swearing to engage in political or military activity—including taking up of arms.

20. Rather, Bolden-Hardge's sincerely held religious beliefs mandate that her allegiance is first and foremost to the Kingdom of God—which she believes to be a government in heaven—and that she cannot engage in any sort of violence in support of a human government.

21. In January 2016, Bolden-Hardge started working for the California Franchise Tax Board (FTB) as a Staff Services Analyst. When she was presented with a loyalty oath at the time of her hiring in that job, Bolden-Hardge declined to sign the oath in accordance with her faith. Even so, the FTB allowed her to continue in the position for another 18 months without objection.

22. In 2017, Bolden-Hardge applied for a position with the California State Controller's Office as an Associate Governmental Program Analyst. She understood that this position would primarily involve training and assisting with the agency's payroll. None of the position's job duties require taking up arms, nor does the job present any particular security risk.

23. Among other things, the job posting for the SCO analyst position promised: "The State of California is an equal opportunity employer to all, regardless of . . . religious creed . . . ."

24. Bolden-Hardge met all qualifications for the SCO job, as affirmed by the SCO's review of her education and experience, and her high score on the "Supplemental Application Exam."

25. Based on Bolden-Hardge's exam scores, education, and work history, the SCO determined she was qualified for the analyst position and offered her it in late July 2017.

26. Bolden-Hardge accepted the job offer. After fulfilling all job qualifications and passing required criminal-record and background checks, Bolden-Hardge was confirmed to have passed all pre-employment requirements. She was told her first workday would be August 7, 2017.

27. Before her start date, however, the SCO asked Bolden-Hardge to sign an oath as part of the onboarding process. The oath stated: "I, _____, do solemnly swear (or affirm) that I will support and defend the Constitution of the United States and the Constitution of the State of California against all enemies, foreign and domestic; that I will bear true faith and allegiance to the Constitution of the United States and the Constitution of the State of California; that I take this obligation freely, without any mental reservation or purpose of evasion; and that I will well and faithfully discharge the duties upon which I am about to enter."

28. Based on religious teachings, Bolden-Hardge sincerely believes that the language in the prescribed oath—including swearing faith and allegiance to the state and swearing to "defend . . . against all enemies, foreign and domestic"—would require her to put her allegiance to the government over her allegiance to God and likewise commit her to take up arms in defense of the state, all in violation of her sincerely held religious beliefs.

29. Indeed, signing the oath would compel Bolden-Hardge to affirmatively state and affirm something contrary to her faith.

30. To avoid violating her faith or speaking contrary to that faith, therefore, Bolden-Hardge submitted a written request for a religious accommodation on August 1, 2017.

31. Specifically, Bolden-Hardge agreed to sign the oath but with an accompanying indication that her allegiance was first and foremost to God and that she would not take up arms.

32. Bolden-Hardge offered a proposed addendum as follows: "I, Brianna Bolden-Hardge, vow to uphold the Constitutions of the United States and of the State of California while working in my role as an employee of the State Controller's Office. I will be honest and fair in my dealings and neither dishonor the Office by word nor deed. By signing this oath, I understand that I shall not be required to bear arms, engage in violence, nor to participate in political or military affairs. Additionally, I understand that I am not giving up my right to freely exercise my religion, nor am I denouncing my religion by accepting this position."

33. Following Bolden-Hardge's accommodation request, the SCO pushed her start date back a week, claiming it needed time for its human-resources and legal departments to review the matter.

34. A few days later, the SCO rescinded Bolden-Hardge's job offer on the stated ground that the oath requirement could not be modified and her proposed addendum would constitute a modification.

35. In addition to her written request on August 1, Bolden-Hardge also pursued her request for accommodation in phone calls and emails with SCO employees and officials.

36. The SCO failed to explore any available alternative means of accommodating Bolden-Hardge, insisting instead on the loyalty oath without exception, notation, or addendum.

37. By extending the job offer to Bolden-Hardge, the SCO had deemed her qualified. It rescinded her job offer only after—and because—she asked for a religious accommodation.

38. In so doing, the SCO willfully and intentionally denied her employment and refused to consider or accommodate Bolden-Hardge's religious convictions.

39. Bolden-Hardge detrimentally relied on the SCO's offer. Among other things, she announced her impending departure to her then-employer, beginning the severance process. She also discontinued her weeks-long job search.

40. As a result of the SCO's rescission of her job offer, Bolden-Hardge returned to her job at the Franchise Tax Board for six more months at compensation inferior to the SCO position, while she actively sought out a new job that offered compensation comparable to the SCO's offer.

41. When Bolden-Hardge returned to the FTB, she was asked to sign the loyalty oath she had declined to sign when she had started working there as a Staff Services Analyst in January 2016. But unlike the SCO, the FTB then promptly granted Bolden-Hardge's request for religious accommodation and allowed her to sign the oath with an attached addendum stating her allegiance was first and foremost to God and that she would not take up arms.

42. After her prolonged underemployment at the FTB, Bolden-Hardge ultimately secured an Associate Governmental Program Analyst position—albeit this time for the California Department of Corrections and Rehabilitation (CDCR).

43. Bolden-Hardge has since transferred to the California Department of Housing and Community Development (HCD). Among other responsibilities, this employment has included helping our state address the COVID-19 pandemic by assisting with contact tracing and education efforts for those who contract the virus.

44. The CDCR and HCD hired Bolden-Hardge without insisting she sign a loyalty oath.

45. On information and belief, other state agencies in California have granted accommodations to employees who object to signing the loyalty oath.

46. The SCO is and at all relevant times has been responsible for hiring its own employees.

47. The SCO employs more than 1,500 people, and at no time relevant to this Complaint did it ever employ fewer than 15 persons.

48. The SCO's budget for fiscal year 2017-2018 exceeded $200 million.

## FIRST CLAIM FOR RELIEF

**Violation of Title VII of the Civil Rights Act of 1964**
**Disparate Treatment/Failure to Accommodate on the Basis of Religion**
**(42 U.S.C. § 2000e, *et seq.*)**
**Against The SCO**

49. Bolden-Hardge realleges and incorporates by reference all the above paragraphs of this Complaint.

50. Title VII forbids an employer from refusing a job to someone because of her need for religious accommodation, absent proof that granting the accommodation would cause it undue hardship. 42 U.S.C. §§ 2000e(j), 2000e-2(a)(1); *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 774 (2015).

51. This extension of actionable religious discrimination to include a failure to accommodate derives from Title VII's definition of "religion" to include "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j).

52. A plaintiff can therefore make out a prima facie case under Title VII by showing (1) she held a bona fide religious belief, the practice of which conflicted with an employment duty; (2) the employer took adverse action—including the refusal to hire—because of the plaintiff's inability to fulfill the job requirement; and (3) the plaintiff's religious practice was a motivating factor in the employer's decision. Chin et al., Cal. Prac. Guide: Employment Litigation (The Rutter Group 2019) ¶ 7:620; see also *Abercrombie & Fitch*, 575 U.S. at 775.

53. More specifically, courts and the EEOC have insisted that federal law can require employers to accommodate sincere religious objections to a loyalty oath—even when that oath might otherwise be required by state law. *See, e.g.*, *Lawson v. Washington*, 296 F.3d 799, 802-04 (9th Cir. 2002) (recognizing as actionable under Title VII a statutorily prescribed oath that would violate an employee's obligation as a Jehovah's Witness to "only swear allegiance to his faith and to God"); *Bessard v. Cal. Cmty. Colls.*, 867 F. Supp. 1454, 1462 (E.D. Cal. 1994) (finding a public-employer oath gave rise to a claim under the Religious Freedom Restoration Act, because its language "to 'bear true faith and allegiance' to the state and federal constitutions contravene[d] plaintiffs' sincerely held belief that they must bear faith and allegiance to God alone"); *see also* EEOC Decision No. 85-13, 38 Fair Empl. Prac. Cas. (BNA) 1884 (1985) (concluding that a public employer's refusal to accommodate an employee's request to sign an alternate oath for religious reasons violated Title VII).

54. Here, Bolden-Hardge had a sincerely held religious belief in primary loyalty to God and refusing to take up arms, and the practice of that belief conflicted with the SCO's stated requirement of signing the loyalty oath. Bolden-Hardge informed the SCO of this conflict and expressly sought an accommodation.

55. In response to Bolden-Hardge's request for an accommodation, the SCO took an adverse action against Bolden-Hardge by rescinding her offer of employment and declining to hire her because of her religious need for an accommodation. *See* 42 U.S.C. § 2000e-2(a)(1) (actionable adverse actions include "fail[ing] or refus[ing] to hire," "discharg[ing]," or otherwise discriminating with respect to the "terms" and "conditions" of employment).

56. Furthermore, "[w]hen an employer does not propose an accommodation, . . . the employer must accept the employee's proposal or demonstrate that the proposal would cause the employer undue hardship." *E.E.O.C. v. Townley Eng'g & Mfg. Co.*, 859 F.2d 610, 615 (9th Cir. 1988*)*; *see also Opuku-Boateng v. California*, 95 F.3d 1461, 1467 (9th Cir. 1996) ("Only if the employer can show that no accommodation would be possible without undue hardship is it excused from taking the necessary steps to accommodate the employee's religious beliefs.").

57. But the SCO made no efforts at all to accommodate Bolden-Hardge's sincerely held religious objection to the loyalty oath—either through her proposed addendum or otherwise—and then rescinded her job offer because of that conflict. Its failure to produce any alternative therefore requires it to have accepted Bolden-Hardge's proposal absent undue hardship.

58. Although the SCO has yet to invoke any hardship defense and did not do so at the time it reneged on its job offer to Bolden-Hardge, accommodating Bolden-Hardge would not have imposed an undue hardship on the SCO. Other state agencies have not insisted on the stated oath or its language without allowing accommodations for objectors.

59. As a result of the SCO's violations of Title VII, Bolden-Hardge suffered lost income and other economic and non-economic damages.

## SECOND CLAIM FOR RELIEF

**Violation of Title VII of the Civil Rights Act of 1964
Disparate Impact on the Basis of Religion
(42 U.S.C. § 2000e-2(a)(2) & (k))
Against The SCO**

60. Bolden-Hardge realleges and incorporates by reference all the above paragraphs of this Complaint.

61. The SCO's insistence on the loyalty-oath requirement without any accommodation deprives and tends to deprive Bolden-Hardge and other similarly situated individuals of employment opportunities on the basis of religion in violation of Title VII's disparate-impact prohibition. 42 U.S.C. §§ 2000e-2(a)(2) & (k).

62. Title VII makes it illegal for an employer to "limit, segregate, or classify his employees or applicants . . . in any way which would deprive or tend to deprive any individual of employment opportunities . . . because of such individual's . . . religion." 42 U.S.C. § 2000e-2(a)(2).

63. Furthermore, the statute provides that an unlawful employment practice based on disparate impact is established when either an employee shows that an employment policy causes such a disparate impact and the employer fails to show "that the challenged practice is job related . . . and consistent with business necessity," or the employee shows there is an alternative way to serve the stated needs but the employer refuses it. 42 U.S.C. § 2000e-2(k)(1)(A).

64. Even if facially neutral, the SCO's categorical requirement that all employees sign the oath without exception, notation, or addendum causes a disparate impact on Bolden-Hardge (and any similarly situated religious individual who shares her religious beliefs) by forcing her to abandon her religious objections or forgo employment with the state.

65. Furthermore, the SCO's categorical position on the oath is neither required for the SCO job in question (a governmental analyst position focusing on payroll) nor consistent with business necessity. Moreover, the SCO refused the less-restrictive but feasible option of allowing Bolden-Hardge to sign the oath with an addendum preserving her religious conscience; indeed, at least one other California state agency has granted that precise accommodation.

66. As a direct and proximate result of this additional unlawful action by the SCO under Title VII, Bolden-Hardge suffered lost income and other economic and non-economic damages.

### THIRD CLAIM FOR RELIEF

**Violation of the California Fair Employment and Housing Act**
**Failure to Accommodate Religious Creed**
**(California Government Code § 12940(*l*)(1))**
**Against The SCO**

67. Bolden-Hardge realleges and incorporates by reference all the above paragraphs of this Complaint.

68. California's Fair Employment and Housing Act (FEHA) forbids an employer from refusing to hire someone "because of a conflict between the person's religious belief or observance and any employment requirement, unless the employer or other entity covered by this part demonstrates that it has explored any available reasonable alternative means of accommodating the religious belief or observance . . . but is unable to reasonably accommodate the religious belief or observance without undue hardship." Cal. Gov't Code § 12940(*l*)(1).

69. A plaintiff job applicant can therefore make out a prima facie case under FEHA by showing that (1) she applied to work for the defendant employer; (2) she had a sincerely held religious belief or practice that conflicted with a stated job requirement; (3) the employer was aware of this conflict; and (4) the employer either did not explore any available reasonable alternatives for accommodating the plaintiff or refused to employ the plaintiff in order to avoid any such accommodation. Judicial Council of California Advisory Committee on Jury Instructions, CACI No. 2560; *see also* Cal. Gov't Code, § 12940(*l*)(1).

70. Bolden-Hardge applied for and was offered a position with the SCO. She informed the SCO that she had a sincerely held religious belief against the SCO's stated job requirement that she sign a loyalty oath. In response, the SCO failed to explore or adopt available reasonable alternatives—including having her sign the oath with the addendum she proposed—and instead rescinded Bolden-Hardge's job offer to avoid having to accommodate her religious observance.

71. As in the analogous Title VII context, "[w]hen an employer does not propose an accommodation," FEHA requires that "the employer must accept the employee's proposal or

demonstrate that the proposal would cause the employer undue hardship." *Townley,* 859 F.2d at 615; *see also Cook v. Lindsay Olive Growers*, 911 F.2d 233, 241 (9th Cir. 1990) (observing that courts rely on Title VII precedents to interpret analogous provisions of FEHA).

72. Finally, Bolden-Hardge's requested accommodation would not have imposed an undue hardship on the SCO. Once again, other state agencies have refused to insist on the oath or its language without addendum or other accommodation. And because Bolden-Hardge's proposed addendum was the only one presented that would eliminate the conflict, the SCO was, at a minimum, obligated to adopt it.

73. As a result of the SCO's violation of FEHA in failing to explore a reasonable alternative accommodation, failing to grant Bolden-Hardge's requested accommodation, and rescinding her job offer, Bolden-Hardge suffered lost income and other economic and non-economic damages.

## FOURTH CLAIM FOR RELIEF

**Violation of the First Amendment to the U.S. Constitution
(via 42 U.S.C. § 1983)
Against All Defendants**

74. Bolden-Hardge realleges and incorporates by reference all the above paragraphs of this Complaint.

75. The First Amendment forbids the government from "prohibiting the free exercise" of religion. U.S. Const. amend. I. Violations of the First Amendment are actionable against the government or any person acting "under color of state law" under 42 U.S.C. § 1983. *Campbell v. Wash. Dep't of Soc. & Health Servs.*, 671 F.3d 837, 842 & n.5 (9th Cir. 2011).

76. In *Sherbert v. Verner*, 374 U.S. 398 (1963), the Supreme Court held that, absent a compelling interest pursued in a way least restrictive to religious exercise, a state may not force a person to violate their sincerely held religious beliefs in order to secure employment.

77. To create this ultimatum, *Sherbert* observed, would force the affected party "to choose between following the precepts of her religion and forfeiting benefits, on the one hand, and abandoning one of the precepts of her religion in order to accept work, on the other hand. Governmental imposition of such a choice puts the same kind of burden upon the free exercise of religion as would a fine imposed against [the plaintiff] for her Saturday worship." *Id.* at 404.

78. The SCO's ultimatum for Bolden-Hardge—to obtain employment only by violating her religious beliefs—violates *Sherbert* because it forces her into this impermissible choice.

79. Furthermore, the SCO violated Bolden-Hardge's First Amendment rights for the additional reason that, by insisting on the oath requirement, it infringed upon her combined rights of free exercise of religion and free speech. As the Supreme Court has explained, even where there is a "neutral, generally applicable law," the First Amendment can nonetheless be violated where that law infringes on both "religiously motivated action" and the "freedom of speech." *Emp. Div., Dep't of Hum. Res. v. Smith*, 494 U.S. 872, 881 (1990).

80. Forcing Bolden-Hardge to affirm a loyalty oath is compelled speech, infringing on both her religious and speech rights. "[T]he First Amendment guarantees 'freedom of speech,' a term necessarily comprising the decision of both what to say and what *not* to say." *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 796-97 (1988); *see also Wooley v. Maynard*, 430 U.S. 705, 714 (1977) ("The right to speak and the right to refrain from speaking are complementary components of the broader concept of 'individual freedom of mind.'").

81. These protections have extended to preclude forced speech around patriotism and loyalty. *See Barnette*, 319 U.S. at 642. And First Amendment protections likewise apply in the public-employment realm. *See Janus v. Am. Fed'n of State, Cnty., and Mun. Emps., Council 31,* 138 S. Ct. 2448, 2463 (2018) ("Compelling individuals to mouth support for views they find objectionable violates that cardinal constitutional command, and in most contexts, any such effort would be universally condemned.").

82. These protections apply with equal force to Bolden-Hardge. Namely, the SCO's oath requirement forces Bolden-Hardge to affirmatively declare, absent her proposed addendum or other accommodation, that she owes primary and arms-bearing allegiance to the state in a manner contrary to her deeply held religious beliefs.

83. Finally, and as this court has held, the SCO's refusal to provide Bolden-Hardge a religious accommodation to its oath requirement—even if the oath is otherwise established by state law—

cannot be justified by a compelling state interest when applied to her, much less one that could not be served by a means less restrictive of religious exercise. *Bessard*, 867 F. Supp. at 1464-45.

84. As a result of Defendants' violations of the First Amendment, Bolden-Hardge suffered lost income and other economic and non-economic damages.

**FIFTH CLAIM FOR RELIEF**

**Violation of the California Constitution**
**(California Constitution art. I, § 4)**
**Against All Defendants**

85. California Constitution Article I, Section 4 states in part: "Free exercise and enjoyment of religion without discrimination or preference are guaranteed."

86. California courts have understood this provision to mean "any attempt at compulsion by the civil power to be an infringement on liberty of thought, as well as on liberty of action." *Gordon v. Bd. of Ed.*, 178 P.2d 488, 493 (Cal. Ct. App. 1947). This general principle applies to religious freedom, on the grounds that "[r]eligious persecution, even in its milder forms, such as disqualifying the members of a particular sect for public office, is . . . inconsistent with the conception of individual freedom . . . which modern thought has embraced." *Id.* at 493.

87. In free-exercise cases under the state constitution, the California Supreme Court has adopted the test articulated in *Sherbert*, 374 U.S. 398. *See Vernon v. City of Los Angeles*, 27 F.3d 1385, 1392 (9th Cir. 1994); *People v. Woody*, 394 P.2d 813, 815-16 (Cal. 1964).

88. According to the California Supreme Court, the *Sherbert* analysis "calls for a determination of, first, whether the application of the statute imposes any burden upon the free exercise of the [affected party's] religion, and second, if it does, whether some compelling state interest justifies the infringement." *Woody*, 394 P.2d at 816. State action that passes this test "must also meet the further requirements that (1) no action imposing a lesser burden on religion would satisfy the government's interest and (2) the action does not discriminate between religions, or between religion and nonreligion." *Vernon*, 27 F.3d at 1392-93, quoting *Molko v. Holy Spirit Ass'n*, 762 P.2d 46, 57 (Cal. 1988).

89. The SCO's rescission of Bolden-Hardge's job offer caused a burden on the free exercise of her religion without a compelling interest. *See Bessard*, 867 F. Supp. at 1464-45. Furthermore,

the SCO's action was not the least restrictive course of action. Among other possibilities, the SCO could have accepted Bolden-Hardge's offer to sign the oath with the proposed addendum. And the SCO's action also discriminates between religions, namely religions—like Jehovah's Witnesses—that oppose oath swearing or the taking up of arms and those that do not.

90. The California Constitution has long been held to authorize a private right of action for declaratory or injunctive relief for violation of its terms. *See Katzberg v. Regents of U. of Cal.*, 58 P.3d 339, 343 (Cal. 2002).

91. Bolden-Hardge was disqualified by Defendants for public employment because of her religious beliefs, in violation of the California Constitution.

92. As a result of Defendants' violations of the California Constitution, Bolden-Hardge suffered the loss of employment opportunities and infringement on her religious freedom.

93. Declaratory and injunctive relief is needed for this claim to effectuate the "[f]ree exercise and enjoyment of religion" guaranteed to Bolden-Hardge by that Constitution. To do otherwise would marginalize these fundamental constitutional protections and provide no course of action to a former job applicant whose rights have been violated.

94. Although Bolden-Hardge seeks all available monetary relief and compensatory damages for each of her other claims in this Complaint, she does not seek monetary relief or compensatory damages for this Fifth Claim for Relief under Article I, Section 4 of the California Constitution.

## **INJUNCTIVE RELIEF**

95. Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as though fully stated here.

96. Plaintiff seeks injunctive relief.

97. No previous application for injunctive relief sought herein has been made to this Court.

98. If this Court does not grant the injunctive relief sought herein, Plaintiff will be irreparably harmed.

99. No plain, adequate, or complete remedy at law is available to Plaintiff to redress the wrongs addressed herein.

## DECLARATORY RELIEF

100. Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as though fully stated here.

101. An actual controversy has arisen and now exists relating to the rights and duties of the parties in that Plaintiff contends Defendants violated her rights not to be subjected to discrimination and a violation of her rights pursuant to the U.S. Constitution and California Constitution.

102. Defendants have denied these allegations.

103. Declaratory relief is therefore necessary and appropriate.

104. Plaintiff seeks a judicial declaration of the rights and duties of the respective parties.

## REQUEST FOR RELIEF

105. WHEREFORE, Bolden-Hardge incorporates by reference each and every allegation contained in the preceding paragraphs as though fully stated here, and prays that the Court grant the following relief:

(a) Issue a declaratory judgment that the practices complained of in this Complaint are unlawful and violate the U.S. Constitution, the California Constitution, Title VII of the Civil Rights Act, and California's Fair Employment and Housing Act;

(b) Enjoin the SCO from pursuing its policy of making no religious accommodations to its oath requirement for its employees;

(c) Require the SCO to adopt hiring and employment policies that comply with Title VII and FEHA, including their requirement that employers make reasonable accommodations to religious beliefs and practices in general and faith-based objections to loyalty oaths in particular and any other appropriate and legally permissible injunctive relief in accordance with proof;

(d) Award Bolden-Hardge all appropriate and legally available monetary relief, including lost compensation and benefits, in an amount to be determined at trial to make her whole for the loss she suffered as a result of the unlawful conduct alleged in this Complaint;

(e) Award Bolden-Hardge any interest at the legal rate on such damages as appropriate, including pre- and post-judgment interest;

(f) Award compensatory damages to Bolden-Hardge to fully compensate her for the pain, suffering, childcare, and other expenses caused by the harmful conduct alleged in this Complaint;

(g) Award Bolden-Hardge a reasonable amount of attorney's fees for the work of her attorneys in pursuit of this action and the protection of her rights;

(h) Award Bolden-Hardge all costs, disbursements, and expenses she paid or that were incurred on her behalf;

(i) Award such additional relief the Court deems just and proper; and

(j) Award any other relief as allowed by law.

## DEMAND FOR JURY TRIAL

Bolden-Hardge hereby demands a trial by jury of all issues and each and every cause of action so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure and the Civil Rights Act of 1991, 42 U.S.C. § 1981a, and California's Fair Employment and Housing Act.[1]

Dated: October 19, 2020

Respectfully submitted,

James A. Sonne
Harvard Law School Religious Freedom Clinic

Zeba A. Huq
Stanford Law School Religious Liberty Clinic

Wendy Musell
The Law Offices of Wendy Musell

Attorneys for Plaintiff Brianna Bolden-Hardge

---

[1] Ms. Bolden-Hardge thanks Madg Lhroob and Jason Muehlhoff for their work in preparing this Complaint as student attorneys for the Harvard Law School Religious Freedom Clinic.