Matthew L. Dimon (CA Bar Student Cert. No. 00599402) (admission pending)
Henry T. Koller (CA Bar Student Cert. No. 00600581) (admission pending)
James A. Sonne (CA Bar No. 250759)
Zeba A. Huq (CA Bar No. 261440)
Stanford Law School Religious Liberty Clinic
559 Nathan Abbott Way
Stanford, CA 94305
Phone: (650) 723-1684
Facsimile: (650) 723-4426
Email: zebahuq@law.stanford.edu

Wendy Musell (CA Bar No. 203507)
The Law Offices of Wendy Musell
180 Grand Ave, Suite 1300
Oakland, CA 94612
Phone: (510) 270-2252
Facsimile: (510) 228-1391
Email: wmusell@wendymuselllaw.com

Attorneys for Plaintiff Brianna Bolden-Hardge

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **BRIANNA BOLDEN-HARDGE,** | No. 2:20-CV-02081-JAM-DB |
| Plaintiff, | |
| v. | **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |
| **OFFICE OF THE CALIFORNIA STATE CONTROLLER and BETTY T. YEE in her official capacity as California State Controller,** | Hearing Date: March 23, 2021<br>Time: 1:30 p.m.<br>Dept: Courtroom 6, 14th Floor<br>Judge: Hon. John A. Mendez<br>Action Filed: October 19, 2020 |
| Defendants. | |

Plaintiff's Opposition to Defendants' Motion to Dismiss

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION .....................................................................................................................1

STATEMENT OF FACTS .........................................................................................................2

STANDARD OF REVIEW ........................................................................................................5

ARGUMENT ..............................................................................................................................5

I.    Bolden-Hardge sufficiently pled that Defendants violated Title VII in failing to accommodate her religious beliefs concerning the loyalty oath (Claim #1). ...........................5

II.   Bolden-Hardge's sufficiently pled cause of action for disparate impact under Title VII remains unaddressed and therefore survives dismissal (Claim #2). .........................................9

III.  Bolden-Hardge sufficiently pled that Defendants violated FEHA in failing to accommodate her religious beliefs concerning the loyalty oath (Claim #3). .........................10

IV.  Bolden-Hardge sufficiently pled that Defendants violated the free-exercise clauses of the U.S. and California Constitutions (Claims #4 and #5). ...........................................................13

CONCLUSION .........................................................................................................................15

# TABLE OF AUTHORITIES

## CASES

*Anderson v. Gen. Dynamics Convair Aerospace Div.*, 589 F.2d 397 (9th Cir. 1978) .................. 6

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................................ 5

*Cal. Fair Empt. & Hous. Comm'n v. Gemini Alum. Corp.*, 122 Cal. App. 4th 1004 (2004) ..... 11

*Catholic Charities of Sacramento, Inc. v. Superior Court*, 32 Cal. 4th 527 (2004) ................... 13

*Chilton v. Contra Costa Cmty. Coll. Dist.*, 55 Cal. App. 3d 544 (1976) ................................ 8, 14

*Cole v. Richardson*, 405 U.S. 676 (1972) ............................................................................. 8, 14

*Gamble v. Kaiser Found. Health Plan, Inc.*, 348 F. Supp. 3d 1003 (N.D. Cal. 2018) ............... 10

*Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003) .......................................... 5

*Emp. Div., Dep't of Human Resources v. Smith*, 494 U.S. 872 (1990) ..................................... 13

*E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768 (2015) ...................................... 5, 6

*Fulton v. City of Philadelphia*, 104 S. Ct. 1104 (mem.) (Feb. 24, 2020) .................................. 13

*Lee v. Hertz Corp.*, 330 F.R.D. 557 (N.D. Cal. 2019) ............................................................... 10

*Malabed v. N. Slope Borough*, 335 F.3d 864 (9th Cir. 2003) ...................................................... 7

*Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097 (9th Cir. 2008). ................................. 5

*Opuku-Boateng v. California*, 95 F.3d 1461 (9th Cir. 1996) ................................................. 6, 11

*People v. Woody*, 61 Cal. 2d 716 (1964) ................................................................................... 13

*S.F. Police Officers Ass'n v. City and Cty. of San Francisco*, 69 Cal. App. 3d 1019 (1977) ....... 8

*Scott v. Kuhlmann*, 746 F.2d 1377 (9th Cir. 1984). ........................................................... 5, 6, 14

*Seaworth v. Pearson*, 203 F.3d 1056 (8th Cir. 2000) ......................................................... 7, 8, 9

*Sherbert v. Verner*, 374 U.S. 398 (1963) ................................................................................... 13

*Smith v. Cnty. Eng'r*, 266 Cal. App. 2d 645 (1968) ...................................................... 8, 9, 12, 14

*Soldinger v. Nw. Airlines, Inc.*, 51 Cal. App. 4th 345 (1996) ....................................... 11, 12, 13

*Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826 (9th Cir. 1999) ........................... 7, 8, 9

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) ..................................................................... 5

*Tagore v. United States*, 735 F.3d 324 (5th Cir. 2013) ........................................................... 8, 9

*Tooley v. Martin-Marietta Corp.*, 648 F.2d 1239 (9th Cir. 1981) .......................................... 6, 9

*Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63 (1977) ...................................................... 11

*Uzuegbunam v. Preczewski,* No. 19-968, 2021 WL 850106 (U.S. Mar. 8, 2021) ...................... 14

*W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624 (1943) ...................................................... 14

**STATUTES**

42 U.S.C. § 1983 .......................................................................................................................... 14

42 U.S.C. § 2000e(j) .............................................................................................................. 5, 6, 10

42 U.S.C. § 2000e-2 ............................................................................................................... 5, 9, 10

42 U.S.C. § 2000e-7 ........................................................................................................................ 7

Cal. Gov't Code § 12926 ............................................................................................................... 11

Cal. Gov't Code § 12940 ................................................................................................... 10, 11, 12

Cal. Gov't Code § 18150 ................................................................................................................. 8

Cal. Gov't Code § 18151 ................................................................................................................. 8

N.J. Stat. Ann. § 10:5-12(q) (2009) ............................................................................................... 11

N.Y. Exec. L. § 296(10)(d) (2016). ............................................................................................... 11

Or. Rev. Stat. § 659A.033(4) (2011) ............................................................................................. 11

**CONSTITUTIONAL PROVISIONS**

U.S. Const. amend. I. .................................................................................................................... 13

Cal. Const. art. I, § 4. .................................................................................................................... 13

Cal. Const. art. XX, § 3. ................................................................................................... 3, 8, 12, 14

**OTHER AUTHORITIES**

Cal. Legis. Counsel, No. 0005360 (Aug. 28, 2012) AB 1964. ..................................................... 11

California State University, *The State Loyalty Oath* (2011) .......................................................... 4

Chin et al., Cal. Practice Guide: Employment Litigation (The Rutter Group 2019) ..................... 5

EEOC Ruling 85-13 (Aug. 23, 1985). ............................................................................................. 7

Scott Jaschik, *Loyalty Oath Compromise*, Inside Higher Ed (June 3, 2008) ................................. 4

Richard C. Paddock, *Enduring Oath Still Testing Loyalties*, L.A. Times (May 2, 2008) ............ 4

Veto Statement, S.B. 115, Cal. Leg., 2009-2010 Reg. Sess. (Cal. 2009) ................................. 4, 12

*William S. Anderson*, EEOC DOC 01890285, 1990 WL 711510 (Apr. 2, 1990) ......................... 7

**INTRODUCTION**

The motion before the Court concerns a state employer's futile effort to dodge well-pled claims arising from its decision to rescind the plaintiff's job offer rather than afford her a modest accommodation in recognition of her faith as a Jehovah's Witness. The motion should be denied.

The California State Controller's Office (SCO) withdrew a job offer it had made Brianna Bolden-Hardge to work in its payroll department after she asked to attach a statement to the state loyalty oath describing her religious beliefs. Notably, the statement nowhere disclaimed the oath but simply indicated that Bolden-Hardge's first duty is to God and that she wouldn't take up arms. What's more, Bolden-Hardge's request has been granted her in other California government jobs and is allowed by other state agencies, and similar accommodations were touted by former Governor Schwarzenegger as so obviously authorized by the state's religious-accommodation laws as to not require an amendment to those laws on the point. At a minimum, therefore, SCO's obstinance gives rise to claims under Title VII of the Civil Rights Act of 1964, the California Fair Employment and Housing Act (FEHA), and the U.S. and California Constitutions that are worthy of exploration and cannot be decided at this stage and on the pleadings.

In seeking dismissal of the employment claims, Defendants nowhere dispute that Bolden-Hardge has pled a prima facie case for each cause of action. Rather, they argue only that their refusal to accommodate her was justified by the "undue hardship" defense against religious-accommodation claims made available to employers under Title VII or FEHA (Claims #1 and #3). But whether an "undue hardship" arises under those statutes is an affirmative defense that is notoriously fact-intensive and depends on the particulars of each case across many factors. It is a matter on which dismissal at the pleadings stage is ill suited. Moreover, Defendants nowhere address Bolden-Hardge's Title VII disparate-impact claim (Claim #2), thereby conceding there is no legal basis for dismissing that claim. Indeed, any supposed "undue hardship" is a legally distinct matter from the "business necessity" defense Defendants would need to prove to defeat a disparate-impact claim—a defense they nowhere assert in their motion.

Defendants say that allowing Bolden-Hardge's requested statement would nonetheless constitute a dismissal-worthy hardship because the oath is required by the state constitution. But

the federal duty to accommodate under Title VII trumps this state law. Moreover, the nature and extent of Defendants' liability for supposedly violating the oath requirement remains an open question subject to inquiry under Title VII and FEHA. Contrary to the cases Defendants cite where private employers refused accommodations that would cause them to break the law, for example, the employer here is the state itself and Bolden-Hardge has alleged other agencies in fact allow what she seeks. Although Defendants claim the state-oath provision forbids Bolden-Hardge's statement, that provision says only that other oaths cannot be required, not that further comment is forbidden. Plus, the case authority Defendants cite against addenda is distinguishable because the language sought by the plaintiff there defied the state. No such disloyalty exists here.

Finally, in seeking to dismiss Bolden-Hardge's free-exercise claims (Claims #4 and #5), Defendants again do not dispute Bolden-Hardge has alleged a prima facie case. Rather, they argue that loyalty oaths have been upheld against constitutional challenge in other contexts, the SCO is immune from the federal claim under the Eleventh Amendment, and no relief can be afforded Bolden-Hardge on the federal claim based on the unavailability of damages and mootness. But the distinct question of whether Defendants' rejection of Bolden-Hardge's modest request violated her free-exercise rights remains disputed. And although Defendants have raised an immunity defense for the SCO, they haven't done so for Defendant Yee. Regardless, Bolden-Hardge should at least be allowed to amend her complaint to bring an individual-capacity damages claim against Yee or "Doe" defendants given the plain conflict between what happened to Bolden-Hardge and the established approach of other state agencies and the Governor.

## STATEMENT OF FACTS

Brianna Bolden-Hardge is a devout Jehovah's Witness. Compl. ¶¶ 17-18. As a member of that well-established religious tradition, Bolden-Hardge sincerely believes her faith forbids her from (1) swearing primary allegiance to any human government, and (2) swearing to engage in political or military activity, including the taking up of arms. *Id.* ¶ 19. Notably, Bolden-Hardge has no categorical objection to swearing an oath to uphold the law and honor her employer; it's simply that her first and foremost loyalty is to God. *Id.* ¶¶ 20, 31-32.

In 2017, Bolden-Hardge applied for a position with California's Office of the State Controller as an Associate Governmental Program Analyst. *Id.* ¶ 22. After reviewing Bolden-Hardge's education, work history, and high score on the application's supplemental exam, the SCO determined she was qualified for the position and offered her the job. *Id.* ¶¶ 24-25. Bolden-Hardge accepted the offer, passed the required background checks, and was given a start date. *Id.* ¶ 26. She announced her impending departure to her then-employer, the California Franchise Tax Board (FTB)—which, like the SCO, is a state employer. *Id.* ¶¶ 21, 39.

Before Bolden-Hardge's start date with the SCO came, however, the agency asked her to sign the loyalty oath provided for in the state constitution. *Id.* ¶ 27. It states:

> I, _, do solemnly swear (or affirm) that I will support and defend the Constitution of the United States and the Constitution of the State of California against all enemies, foreign and domestic; that I will bear true faith and allegiance to the Constitution of the United States and the Constitution of the State of California; that I take this obligation freely, without any mental reservation or purpose of evasion; and that I will well and faithfully discharge the duties upon which I am about to enter.

*Id.*; Cal. Const. art. XX, § 3.

Yet based on religious teachings, Bolden-Hardge feared that this oath's language—in particular, swearing faith to the state and pledging to "defend . . . against all enemies, foreign and domestic"—would, absent further clarification, commit her to violate her faith's proscription against swearing primary allegiance to a human government or taking up arms in defense of the state. Compl. ¶ 28. To avoid affirming something contrary to her faith, therefore, Bolden-Hardge sought a religious accommodation. *Id.* ¶ 30. Specifically, she agreed to sign the oath along with the following statement:

> I, Brianna Bolden-Hardge, vow to uphold the Constitutions of the United States and of the State of California while working in my role as an employee of the State Controller's Office. I will be honest and fair in my dealings and neither dishonor the Office by word nor deed. By signing this oath, I understand that I shall not be required to bear arms, engage in violence, nor to participate in political or military affairs. Additionally, I understand that I am not giving up my right to freely exercise my religion, nor am I denouncing my religion by accepting this position.

*Id.* ¶ 32. In direct response, the SCO rescinded Bolden-Hardge's job offer. *Id.* ¶ 34.

Bolden-Hardge then went back to her job at the FTB. *Id.* ¶¶ 40-41. Upon her return, the FTB asked her to sign a loyalty oath it said she was supposed to sign when she was first hired 18 months earlier but never did so. *Id.* ¶¶ 21, 41. Unlike the SCO, however, the FTB granted Bolden-Hardge's accommodation request to sign the oath with her expository statement. *Id.* Bolden-Hardge has since worked for the California Department of Corrections and Rehabilitation, and then for the California Department of Housing and Community Development. *Id.* ¶¶ 42-43. Neither agency required Bolden-Hardge to sign a loyalty oath. *Id.* ¶ 44.

Other state agencies in California have also granted religious accommodations to employees on the signing of the loyalty oath. *Id.* ¶ 45. For example, although it is not yet in her complaint but could be included on amendment if need be, the California State University (CSU) has a policy of allowing an "explanatory statement" accommodation similar to the one Bolden-Hardge sought. *See* Scott Jaschik, *Loyalty Oath Compromise*, Inside Higher Ed (June 3, 2008), https://www.insidehighered.com/news/2008/06/03/loyalty-oath-compromise. Relying on EEOC guidance, CSU also insists that "[o]bjections to the oath on religious grounds must be examined on a case-by-case basis." California State University, *The State Loyalty Oath* (2011), https://www.sjsu.edu/up/docs/state-of-california-loyalty-oath-information.pdf. Likewise, the University of California system allows employees to "submit an addendum [to the oath], as long as it does not negate the oath," and even offers sample addenda that include statements like "[t]his is not a promise to take up arms in contravention of my religious beliefs," or "I owe allegiance to Jehovah." Richard C. Paddock, *Enduring Oath Still Testing Loyalties*, L.A. Times (May 2, 2008), https://www.latimes.com/archives/la-xpm-2008-may-02-me-oath2-story.html.

Finally, in vetoing as unnecessary an amendment to FEHA that would expressly provide accommodation to public loyalty oaths, then-Governor Schwarzenegger promised that "[e]xisting law already requires public employers, including the State of California, to accommodate an employee whose sincerely held religious beliefs conflict with an employment requirement." Veto Statement, S.B. 115, Cal. Leg., 2009-2010 Reg. Sess. (Cal. 2009); *see also* Compl. ¶ 7.

**STANDARD OF REVIEW**

To survive a motion to dismiss, a complaint need only contain sufficient facts to suggest a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). More specifically, the Rule 12(b)(6) standard merely requires allegations that, taken as true and construed in the light most favorable to the plaintiff, "plausibly give rise to an entitlement of relief." *Iqbal*, 556 U.S. at 679. Plausibility is a "context-specific" inquiry based on "judicial experience and common sense." *Id.*

Moreover, in a suit alleging employment discrimination or non-accommodation, plaintiffs need not even plead all the elements of a prima facie case. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002). Rather, dismissal is "appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). Moreover, affirmative defenses should not be resolved on a motion to dismiss where there are disputed issues of fact. *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984).

Finally, even where a complaint may otherwise be subject to dismissal under Rule 12(b)(6), leave to amend should be granted with "extreme liberality." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003).

**ARGUMENT**

**I. Bolden-Hardge sufficiently pled that Defendants violated Title VII in failing to accommodate her religious beliefs concerning the loyalty oath (Claim #1).**

Title VII of the Civil Rights Act forbids employers from refusing to hire someone because of a conflict between her religious belief or observance and an employment requirement, unless the employer proves it cannot so accommodate without undue hardship. 42 U.S.C. §§ 2000e(j), 2000e-2(a)(1); *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768 (2015).

A plaintiff makes out a prima facie case for a failure-to-accommodate claim under Title VII by showing: (1) she held a bona fide religious belief, the practice of which conflicted with an employment duty; (2) the employer took adverse action—including the refusal to hire—because of the plaintiff's inability to fulfill the job requirement; and (3) the plaintiff's religious practice was a motivating factor in the employer's decision. Chin et al., Cal. Practice Guide: Employment

Litigation ¶ 7:620 (The Rutter Group 2019); *see also Abercrombie & Fitch*, 575 U.S. at 775. For its part, the employer can defeat the plaintiff's claim by proving that accommodating the religious belief at issue would cause "undue hardship" to its business. 42 U.S.C. § 2000e(j).

Notably, determinations of undue hardship must be made on a case-by-case basis in light of "the particular factual context of each case." *Anderson v. Gen. Dynamics Convair Aerospace Div.*, 589 F.2d 397, 400 (9th Cir. 1978). Additionally, that finding "cannot be supported by merely conceivable or hypothetical hardships; instead, it must be supported by proof of 'actual imposition on co-workers or disruption of the work routine.'" *Tooley v. Martin-Marietta Corp.*, 648 F.2d 1239, 1243 (9th Cir. 1981) (quoting *Anderson*, 589 F.2d at 406-07). And for an employer to establish an undue-hardship defense, it must do so for every potential accommodation. *Opuku-Boateng v. California*, 95 F.3d 1461, 1469 (9th Cir. 1996) (requiring employer to show "the various potential accommodations would all have resulted in undue hardship").

Defendants nowhere dispute Bolden-Hardge has alleged the prima facie elements of an accommodation claim under Title VII. Indeed, Bolden-Hardge alleged that her sincere belief in primary loyalty to God conflicted with the oath requirement absent the expository statement, and that the SCO rescinded the job offer because of her need for religious accommodation. Compl. ¶¶ 54-55. Bolden-Hardge's Title VII accommodation claim therefore must move forward unless Defendants can prove on the pleadings that any accommodation would cause them undue hardship.

Of course, Defendants cannot win on the affirmative defense of undue hardship at the initial pleadings stage by pointing to actual difficulty they might've incurred in accommodating Bolden-Hardge; nor do they even try—aside from general allusions to the importance of loyalty to the state. Mot. to Dismiss at 3-4. After all, any purported concrete hardship is, at a minimum, disputed and therefore not amenable to dismissal. *See Scott*, 746 F.2d at 1378 (observing complaints should not be dismissed based on affirmative defenses with disputed facts). On that note, Bolden-Hardge alleged that her job involved no particular security risk, she agreed to sign the oath and vow "to uphold the Constitutions of the United States and of the State of California" and "be honest and fair in [her] dealings and neither dishonor the Office by word nor deed," and other state agencies have accommodated her and those similarly situated. Compl. ¶¶ 22, 31-32, 41, 44-45.

Instead, Defendants contend allowing Bolden-Hardge's proposal would amount to undue hardship as a matter of law because, in their view, accommodating her would violate state law. Mot. to Dismiss at 10-11. But this supposed per se hardship argument is wrong for at least two reasons when it comes to the Title VII accommodation claim. First, and as the EEOC has emphasized, where a state loyalty oath implicates a public employer's duty to accommodate under Title VII, the latter trumps. Second, and in any event, it remains disputed that the SCO would've in fact violated the state oath provision had it accommodated Bolden-Hardge's faith.

In describing what to do where following state law would result in a violation of Title VII, Section 708 of the latter statute requires state law to yield:

> Nothing in this title shall be deemed to exempt or relieve any person from any liability, duty, penalty, or punishment provided by any present or future law of any State or political subdivision of a State, *other than any such law which purports to require or permit the doing of an act which would be an unlawful employment practice under this title*.

42 U.S.C. § 2000e-7 (emphasis added); *see also Malabed v. N. Slope Borough*, 335 F.3d 864, 870-71 (9th Cir. 2003) (observing Title VII trumps state laws that "require[] or permit[] acts that would be unlawful employment practices under Title VII").

On facts similar to Bolden-Hardge's, therefore, the EEOC found a violation of Title VII in light of Section 708. EEOC Ruling 85-13 (Aug. 23, 1985). The employee there was a Jehovah's Witness who objected to a loyalty oath as a condition of public employment, and although state law required the oath and expressly proscribed any modification, the EEOC stressed Section 708 meant that Title VII's accommodation obligations superseded the oath. *Id*. So too here. If the rule were otherwise, states could craft work-arounds from federal anti-discrimination law, gutting its requirements. This is hardly what Congress had in mind when passing the Civil Rights Act.[1]

To support their argument, Defendants rely on *Sutton v. Providence St. Joseph Medical Center*, 192 F.3d 826 (9th Cir. 1999), *Seaworth v. Pearson*, 203 F.3d 1056 (8th Cir. 2000), and

---

[1] Another notable EEOC ruling involved a Jehovah's Witness who objected to a loyalty oath that was imposed by federal law. *William S. Anderson*, EEOC DOC 01890285, 1990 WL 711510 (Apr. 2, 1990). Once again, the EEOC backed the plaintiff, holding that the federal oath law did not allow the employer—there, the U.S. Postal Service—to dodge its Title VII obligations. *Id.*

*Tagore v. United States*, 735 F.3d 324 (5th Cir. 2013). But these cases involved conflicts between Title VII religious accommodation and other federal laws, not state laws: on providing a social-security number over religious objections in *Sutton* and *Seaworth*, and abiding by federal-building security rules despite the need to wear a kirpan in *Tagore*. *Sutton*, 192 F.3d at 829-30; *Seaworth*, 203 F.3d at 1056-57; *Tagore*, 735 F.3d at 326-27. Furthermore, *Tagore* was resolved on summary judgment, not on the pleadings, based on a proven risk of actual harm. 735 F.2d at 327.

Beyond Section 708 supremacy, dismissal is also inappropriate because it remains disputed whether the SCO would've in fact violated state law had it accommodated Bolden-Hardge. For starters, the state constitution's oath provision nowhere forbids an accommodation; rather, it provides only that "no other oath, declaration or test shall be *required*." Cal. Const. art. XX, § 3 (emphasis added); *see also* Cal. Gov't Code §§ 18150, 18151 (speaking only of "required" oath). For this reason, Defendants' reliance on *San Francisco Police Officers Association v. City and County of San Francisco* to assert that "this oath is the *only* oath a public employer can administer" (Mot. to Dismiss 6) is of no moment, as the court there held only that the constitution forbids the state from imposing an additional oath obligation, not that an accommodation couldn't be granted the employee. 69 Cal. App. 3d 1019, 1025 (1977).[2]

Defendants also cite *Smith v. County Engineer of San Diego County*, 266 Cal. App. 2d 645 (1968), to argue that no addenda are permitted. But *Smith* did not address the viability of a religious accommodation under Title VII (or FEHA), only whether the plaintiff satisfied the oath requirement there. Moreover, the modification the employer in *Smith* rejected differs considerably from Bolden-Hardge's proposed statement in going so far as to express "dissent from the failure of the Constitution to recognize Christ and to acknowledge the Divine institution of civil government." *Id.* at 648. Indeed, the *Smith* court suggested that if the relevant language were "innocuous" or "merely expository," it may well have been acceptable. *See id.* at 656. Since the

---

[2] Defendants' citations to *Cole v. Richardson*, 405 U.S. 676 (1972) and *Chilton v. Contra Costa Community College District*, 55 Cal. App. 3d 544 (1976) are similarly misplaced, as those cases held only that the oaths there were constitutional against certain stated challenges, not that religious accommodation cannot or should not be allowed as a statutory matter.

modification instead "ma[d]e equivocal the essential oath," the *Smith* court found that the plaintiff there failed to satisfy the oath requirement. *Id.* at 656-57.

In contrast, Bolden-Hardge's request neither modifies the text of the oath nor its functional requirements. Rather, she was willing to sign the oath and faithfully perform her duties provided she could clarify what that meant—or, in the words of *Smith*, the proposed statement was "merely expository." *Smith*, 266 Cal. App. 2d at 656; Compl. ¶¶ 28-29, 31. The proposal did not impose additional duties on the SCO, and that agency cannot seriously contend it would weaken the oath by clarifying that a payroll employee need not take up arms; indeed, even if Defendants did have fears about the particular situation, those should be tested in discovery under Title VII.

For that matter, *Sutton*, *Seaworth*, and *Tagore* are distinguishable for the further reason that the supposed "violation of law" here is disputed. Unlike the employers in those cases where the legal risk was clear (e.g., the failure to provide a social-security number) or resolved after the pleading stage, Bolden-Hardge has alleged that, at a minimum, there is disagreement among state agencies and other public officials—including the Governor—whether her accommodation would violate the oath requirement. Compl. ¶¶ 7, 41, 44-45. Additionally, and also unlike the private employers in *Sutton*, *Seaworth*, and *Tagore*, the employer here is the state itself and the diversity of views from other officials requires an examination of the "magnitude as well as the fact of hardship" that cannot be exhausted by mere reference to the pleadings. *Tooley*, 648 F.2d at 1243.

In sum, the motion to dismiss Claim #1 should be denied because Title VII trumps the state oath and because it remains disputed whether the SCO would've incurred undue hardship in allowing Bolden-Hardge to sign the oath while honoring her faith.

**II. Bolden-Hardge's sufficiently pled cause of action for disparate impact under Title VII remains unaddressed and therefore survives dismissal (Claim #2).**

In addition to requiring religious accommodation, Title VII forbids employers from using "a particular employment practice that causes a disparate impact on the basis of . . . religion" unless the employer can show either "that the challenged practice is job related . . . and consistent with business necessity," or there was no less-restrictive practice to serve its supposed needs. 42 U.S.C. § 2000e-2(k)(1)(A); *see also id.* at § 2000e-2(a)(2). Put another way, disparate-impact claims

"involve employment practices that are facially neutral in their treatment of different groups but . . . fall more harshly on one group than another and cannot be justified by business necessity." *Gamble v. Kaiser Found. Health Plan, Inc.*, 348 F. Supp. 3d 1003, 1015 (N.D. Cal. 2018) (internal quotation marks omitted).

To establish a disparate impact at the pleading stage, a plaintiff need only plausibly allege that an employment practice has caused such an impact on a protected group. *Lee v. Hertz Corp.*, 330 F.R.D. 557, 561 (N.D. Cal. 2019). And even if the employer were able to prevail on an affirmative defense at this stage, "undue hardship" is not the standard for analyzing claims of disparate impact. Rather, the affirmative defense to a prima facie case of disparate impact is business necessity. *Compare* 42 U.S.C. § 2000e-2(k)(1)(A)(i), *with* 42 U.S.C. § 2000e(j).

Here, Bolden-Hardge has alleged that Defendants' oath requirement has caused a disparate impact as follows: "Even if facially neutral, the SCO's categorical requirement that all employees sign the oath without exception, notation, or addendum causes a disparate impact on Bolden-Hardge (and any similarly situated religious individual who shares her religious beliefs) by forcing her to abandon her religious objections or forgo employment with the state." Compl. ¶ 64. Moreover, Bolden-Hardge has further alleged that Defendants' stance on the oath is neither required for the job in question nor consistent with business-necessity doctrine, and that her proposal was at least one alternative way of meeting their supposed needs. *Id.* ¶ 65.

Defendants neither mention nor challenge these disparate-impact allegations or their attendant legal standards in their motion. The claim must therefore survive for this reason alone—in addition to the Section 708 supremacy argument for all Title VII claims described above.

### III. Bolden-Hardge sufficiently pled that Defendants violated FEHA in failing to accommodate her religious beliefs concerning the loyalty oath (Claim #3).

California's Fair Employment and Housing Act requires employers to accommodate the religious beliefs or observances of employees or applicants that conflict with job requirements, unless the employer can demonstrate it "has explored any available reasonable alternative means of accommodating the religious belief or observance . . . but is unable to reasonably accommodate . . . without undue hardship." Cal. Gov't Code § 12940(*l*)(1).

Like Title VII, courts apply a burden-shifting analysis to religious-accommodation claims under FEHA. To establish a prima facie case, a plaintiff must show: (1) she had a sincere religious belief; (2) the employer knew of that belief; and (3) the belief conflicted with a job requirement. *Cal. Fair Emp. & Hous. Comm'n v. Gemini Alum. Corp.*, 122 Cal. App. 4th 1004, 1011 (2004). Once the employee establishes a prima facie case, the burden shifts to the employer to show "it initiated good faith efforts to accommodate or no accommodation was possible without producing undue hardship." *Soldinger v. Nw. Airlines, Inc.*, 51 Cal. App. 4th 345, 370 (1996).

Notably, FEHA defines "undue hardship" as "significant difficulty or expense," which is the same high hardship standard the statute applies in the disability-accommodation context and is among the strictest on employers in the nation. Cal. Gov't Code §§ 12926(u); 12940(*l*)(1) & (m).[3] It is not the "de minimis" test of Title VII. *See Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 84 (1977); *see also* Cal. Legis. Counsel, No. 0005360 (Aug. 28, 2012) AB 1964, p.2 ("[T]his bill would . . . clarify[] that the FEHA definition of undue hardship applies to the FEHA religious discrimination section (rather than the 'de minumus' [sic] standard under federal law).").

And in determining "significant difficulty or expense," FEHA further lists five factors: (1) the nature and cost of the accommodation; (2) the financial resources of the workplace and number of employees; (3) the employer's size and financial resources; (4) the number of other employees with the same qualifications to perform the employee's job; and (5) the distribution among the employer's locations. Cal. Gov't Code § 12926(u). Moreover, for an employer to prevail, it must prove significant difficulty or cost for every potential accommodation. *See Soldinger*, 51 Cal. App. 4th at 370 (requiring employer to prove "no accommodation was possible without producing undue hardship"); *see also Opuku-Boateng*, 95 F.3d at 1469 (same).

Defendants nowhere dispute that Bolden-Hardge has alleged a prima facie case under FEHA; indeed, she has. *See* Compl. ¶¶ 70-72. Nor do—or can—Defendants contend they should

---

[3] We know of only three jurisdictions with as heightened a standard as California's "significant difficulty or expense" test for employers to be absolved from accommodating religion: New Jersey (N.J. Stat. Ann. § 10:5-12(q) (2009)), Oregon (Or. Rev. Stat. § 659A.033(4) (2011)), and New York City (N.Y. Exec. L. § 296(10)(d) (2016)).

prevail on the pleadings based on actual hardship. Rather, Defendants simply lump Bolden-Hardge's FEHA claim into their argument about per se Title VII undue hardship. Mot. to Dismiss at 11. But not only do Defendants fail to account for the higher hardship standard required by FEHA or cite any FEHA caselaw on this point, their argument that accommodating Bolden-Hardge's modest request would necessarily violate the law is disputed, and therefore not amenable for dismissal in any event for the same reasons described above for the Title VII claim.

Once again, the oath provision states only that no other oath "shall be required." Cal. Const. art. XX, § 3. It says nothing about the inability of an employee to include an addendum. And although the Court of Appeal in *Smith* struck the modification there, that case didn't involve a FEHA claim. Plus, the rejected language evinced "dissent from the failure of the Constitution to recognize Christ and to acknowledge the Divine institution of civil government." 266 Cal. App. 2d at 648. Bolden-Hardge, on the other hand, pledged her fidelity to the Constitution while merely asking to clarify her understanding that she would not be required to bear arms, engage in political activity, or abandon her right to exercise her religion. Compl. ¶ 32. To add insult to injury, Bolden-Hardge's understanding was correct. As the court in *Smith* observed, the oath imposes no religious test. 266 Cal. App. 2d at 656. And, as Bolden-Hardge would amend her complaint to so allege if need be, other state agencies have confirmed the oath does not require its taker to bear arms.

Indeed, as already pled and discussed above, multiple California agencies have either not required an oath or allowed accommodations similar to the one sought by Bolden-Hardge. Moreover, as then-Governor Schwarzenegger stated in vetoing an express oath exemption as pointless, "[e]xisting law already requires public employers, including the State of California, to accommodate an employee whose sincerely held religious beliefs conflict with an employment requirement." Veto Statement, S.B. 115, Cal. Leg., 2009-2010 Reg. Sess. (Cal. 2009). Surely, if such accommodations are required by California law, providing one does not violate it.

Finally, even if Defendants could show that the specific language Bolden-Hardge proposed would cause them undue hardship—something they cannot do at the pleadings stage regardless—their failure to engage in an interactive process with her also dooms their motion. FEHA requires the employer to have "explored any available reasonable alternative means of accommodating."

Cal. Gov't Code § 12940(*l*)(1); *see also Soldinger*, 51 Cal. App. 4th at 370 (requiring employer to have "initiated good faith efforts to accommodate" or prove "no accommodation was possible without producing undue hardship"). Not only has the complaint alleged that the "SCO failed to explore any available means of accommodating Bolden-Hardge, insisting instead on the loyalty oath without exception, notation or addendum" (Compl. ¶ 32), the practice of other state agencies shows such efforts would hold promise in resolving the conflict.

In sum, Defendants' motion must be denied on the FEHA claim because of that statute's heightened hardship standard, the disputed feasibility of allowing Bolden-Hardge's proposed statement, and/or the failure of Defendants to explore alternatives in accommodating her.

### IV. Bolden-Hardge sufficiently pled that Defendants violated the free-exercise clauses of the U.S. and California Constitutions (Claims #4 and #5).

The First Amendment to the United States Constitution forbids the government from "prohibiting the free exercise" of religion. U.S. Const. amend. I. Likewise, California Constitution Article I, Section 4 states that "[f]ree exercise and enjoyment of religion without discrimination or preference are guaranteed." In *Sherbert v. Verner*, 374 U.S. 398 (1963), the Supreme Court held that, absent a compelling interest pursued in a way least restrictive to religious exercise, a state may not force a person to violate their sincerely held religious beliefs in order to secure employment. Similarly, when a plaintiff brings a claim under California's free-exercise clause, the court must consider "first, whether the application of the statute imposes any burden upon the free exercise of the [affected party's] religion, and second, if it does, whether some compelling state interest justifies the infringement." *People v. Woody*, 61 Cal. 2d 716, 719 (1964).[4]

Bolden-Hardge has alleged that by refusing to allow her to sign the oath with the proposed statement, Defendants imposed a burden on her free exercise of religion in violation of these

---

[4] In *Employment Division, Department of Human Resources of Oregon v. Smith*, 494 U.S. 872 (1990), the Supreme Court presumed the constitutionality under the First Amendment of certain "neutral and generally applicable laws." But not only did *Smith* preserve strict scrutiny in cases involving additional constitutional rights or where exceptions are made, any level of review requires the government to justify itself. See *id*. at 881-85; *see also* Compl. ¶¶ 40-45 (describing individualized determinations by other agencies), 79-81 (on hybrid rights). What's more, the Court is revisiting *Smith* in *Fulton v. City of Philadelphia*, 104 S. Ct. 1104 (mem.) (Feb. 24, 2020), and

provisions. Compl. ¶¶ 78, 89. The burden therefore shifts to Defendants to justify their actions. They, of course, cannot carry this fact-intensive burden on a motion to dismiss. *See Scott*, 746 F.2d at 1378 (holding that "affirmative defenses may not be raised by motion to dismiss" where there are "disputed issues of fact"). Thus, this Court cannot dismiss the claims as a substantive matter.

Defendants make three responsive arguments, but none change the analysis or could not be resolved by amendment. First, they argue the California oath was approved in *Smith*, 266 Cal. App. 2d 645, and loyalty oaths were upheld as constitutional in *Cole v. Richardson*, 405 U.S. 676 (1972) and *Chilton v. Contra Costa Community College District*, 55 Cal. App. 3d 544 (1976). Mot. to Dismiss at 6-9. These cases, however, fail to resolve the question of whether Defendants' rejection of Bolden-Hardge's request to include an additional writing about her beliefs cannot constitute a free-exercise violation. In other words, Article XX Section 3 should be read in concert with the free-exercise provisions of the U.S. and California Constitutions. For that matter, the cases Defendants cite did not involve claims under the federal or state free-exercise clauses at all. Furthermore, and at a minimum, Bolden-Hardge should have the chance to prove her request is distinguishable from *Smith*, *Cole*, and *Chilton*, as well as consistent with the approach of other state agencies and the core free-exercise principles outlined in *West Virginia State Board of Education v. Barnette*, 319 U.S. 624 (1943) and its progeny.

Defendants next argue that the Eleventh Amendment protects the SCO against the federal constitutional claim under 42 U.S.C. § 1983 because it is an "arm of the state." Mot. to Dismiss at 12. Notably, however, Defendants nowhere apply this argument to Defendant Yee, nor do they extend it to the state free-exercise claim. At a minimum, therefore, the state claim remains unchallenged on this basis and Yee remains on the hook for both constitutional claims.

Finally, Defendants argue that the federal constitutional claim is invalid because damages aren't available to official-capacity defendants under Section 1983, and that any claim for prospective relief is moot because Bolden-Hardge isn't seeking reinstatement. *Id.* Taking the latter point first, Defendants' mootness argument fails given the Supreme Court's just-released ruling in

---

the California Supreme Court observed in *Catholic Charities of Sacramento, Inc. v. Superior Court*, 32 Cal. 4th 527, 560 (2004) that *Smith* is not controlling under the state constitution.

*Uzuegbunam v. Preczewski* that nominal damages can alone defeat a mootness challenge in providing adequate redress for past harms as well as prospective relief. No. 19-968, 2021 WL 850106, at *3-4 (U.S. Mar. 8, 2021). Bolden-Hardge's claims are therefore live since she could receive prospective relief at least in the form of nominal damages. And regarding any official-capacity damages obstacle, Bolden-Hardge should be allowed to amend her complaint to seek damages from Defendant Yee or "Doe" defendants in their individual capacity or capacities. After all, a chasm lies between Bolden-Hardge's mistreatment and the welcoming approach of other state agencies—as well as the promise of the Governor—on accommodating faith-based loyalty-oath requests from religious minorities.

## CONCLUSION

To defeat Defendants' motion to dismiss, Bolden-Hardge need only plead a plausible claim for each of her causes of action. She has done that and more.

This Court should deny the motion, or, in the alternative, allow Bolden-Hardge to amend her complaint to address any shortcomings and in the various ways outlined above.

Dated: March 9, 2021

Respectfully submitted,

/s/ James A. Sonne
James A. Sonne
Matthew L. Dimon
Henry T. Koller
Zeba A. Huq
Stanford Law School Religious Liberty Clinic

Wendy Musell
The Law Offices of Wendy Musell

Attorneys for Plaintiff Brianna Bolden-Hardge