1   XAVIER BECERRA, State Bar No. 118517
Attorney General of California
2   FIEL D. TIGNO, State Bar No. 161195
Supervising Deputy Attorney General
3   KELSEY LINNETT, State Bar No. 274547
Deputy Attorney General
4     1515 Clay Street, 20th Floor
P.O. Box 70550
5     Oakland, CA  94612-0550
Telephone:  (510) 879-0986
6     Fax:  (510) 622-2270
E-mail:  Kelsey.Linnett@doj.ca.gov
7   *Attorneys for Office of the California State
Controller and State Controller Betty T. Yee*

8                   IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11

12

| | |
|---|---|
| 13  **BRIANNA BOLDEN-HARDGE,** | Case No. 2:20-cv-02081 JAM-DB |
| 14                          Plaintiff, | |
| 15      **v.** | **DEFENDANTS' REPLY TO MOTION TO DISMISS** |
| 16 | |
| 17  **OFFICE OF THE CALIFORNIA STATE CONTROLLER and BETTY T. YEE in her official capacity as California State Controller,** | Date:           March 23, 2021<br>Time:           1:30 p.m.<br>Dept:           Courtroom 6, 14th Floor<br>Judge:          Hon. John A. Mendez<br>Action Filed:  October 19, 2020 |
| 18 | |
| 19                          Defendants. | |

20

21                        **INTRODUCTION**

22         All of Plaintiff's claims should be dismissed without leave to amend because Plaintiff

23   admits in her opposition that she cannot state a claim in conformity with the law.  Plaintiff

24   concedes that California's requirement that public employees take an oath to support, defend, and

25   bear true faith and allegiance to the Constitution of the United States and the Constitution of the

26   State of California is constitutional.  The oath does not conflict impermissibly with Plaintiff's

27   religion.  Therefore, there is no need to accommodate Plaintiff's request to change the oath.  And,

28   the Office of the State Controller cannot, by law, administer a different oath.  No court has found

                                          1

liability under any theory for a public entity administering a legal oath to public employees, and neither should this Court.

**ANALYSIS**

**I.      All of Plaintiff's Religious Accommodations Claims (#1-3) Fail Because She Cannot Make a Prima Facie Case**

To state a valid claim based on religious accommodation, Plaintiff must show that there is an actual conflict between her job duties and her religion.  See *Tiano v. Dillard Dept. Stores, Inc.*, 139 F.3d 679, 683 (9th Cir. 1998) (Title VII); *Friedman v. Southern Calif. Permanente Med. Group*, 102 Cal.App.4th 39, 45 (2002) (FEHA).  Plaintiff admits that she could do the job and practice her religion without conflict.  She also admits that the oath requirement for public employees is constitutionally valid and that the Office of the State Controller lawfully administered the oath.  Therefore, Plaintiff admits that she has no prima facie case for religious accommodation.

Nevertheless, Plaintiff argues that the denial of her request to modify the oath was itself the employment policy that needs accommodation.  This novel theory is based on circular reasoning because if there is no conflict, there is no need for an accommodation.

A purported conflict does not rise to the level of an *actual* conflict just because Plaintiff requested modifying the oath on an ad hoc basis.  *Smith v. County Engineer*, 266 Cal.App.2d 645, 653-654 (1968) is instructive.  In that case, like here, a public employee's request to change the oath was not addressing an actual conflict but was "gratuitously injecting his religious beliefs into the governmental process."  266 Cal.App. at 656-57.  As the court explained, the "most the constitutional oath says is that the oath taken recognizes the constitutional form of government" and that the oath-taker is "willing to exert his efforts to continue it as the political system for the government of the country and the state and to act against the erosion or destruction of that system."  266 Cal.App. at 652.  There is nothing in the oath that requires a public employee to surrender any constitutional right.  *Id.*

Moreover, it is "neither reasonable, nor good policy, in the case of public employment, to put upon civil government the burden of measuring religious beliefs against the interests and

2

1  requirements of that institution." *Id.* at 657.  The court concluded that any addendum an

2  employee insisted on could not be dismissed as "innocuous or merely expository," whatever its

3  meaning, because it was important enough to the employee who insisted on it.  *Id.* at 656.  Here,

4  too, however innocuous or merely expository Plaintiff claims her modification was, her stated

5  purpose was to affirm her "first duty to God" and not to the state.  The Office of the State

6  Controller rightfully rejected this "gratuitous injection of religious belief."

7  Contrary to Plaintiff's assertion, Defendants have not conceded that Plaintiff's disparate-

8  impact claim is well-pled.  There is no Title VII or FEHA violation for following a constitutional

9  and statutory mandate under any theory.  Even if Plaintiff alleged and proved, as she must for a

10  disparate-impact claim, that the oath requirement has significant adverse effects on persons of a

11  protected class, which she has not done, the Office of the State Controller was justified in

12  rescinding her job offer when she refused to sign the required oath.  *Garcia v. Spun Steak Co.* 998

13  F.2d 1480, 1486 (9th Cir. 1993).

14  Whether the justification is labeled a "business necessity" or an "undue hardship," the

15  concept of "undue hardship" is part of any Title VII claim because it is embedded in Title VII's

16  definition of religion.  The Office of the State Controller has shown that, as a matter of law, its

17  refusal to accept a modification of the constitutionally mandated loyalty oath does not violate

18  Title VII under any theory.  42 U.S.C. § 2000(e)(j) ("The term "religion" includes all aspects of

19  religious observance and practice, as well as belief, unless an employer demonstrates that he is

20  unable to reasonably accommodate to an employee's or prospective employee's religious

21  observance or practice without *undue hardship* on the conduct of the employer's business"

22  (emphasis added).)  Therefore, Defendants have properly challenged both of Plaintiff's Title VII

23  claims.

24  **II.     Even if Plaintiff Has Pled a Prima Facie Religious Accommodation Case, Her Claims**
25  **Must Fail Because Employers Are Not Required to Violate the Law.**

26  Title VII and FEHA share the goal of eliminating discrimination in the workplace and both

27  require religious accommodations if an employment practice infringes on religion.  Here, there is

28  no showing that California's mandated oath infringes on religious freedom.  Moreover, neither

3

1   Title VII nor FEHA forces employers to cater to employees' purported need for religious

2   accommodation at the expense of following the law.

3       **A.   The California Constitution Mandates One Oath and Only One Oath.**

4       Conceding that the oath requirement is constitutional, Plaintiff argues that the oath

5   requirement in question is not in fact a requirement.  Plaintiff characterizes the oath requirement,

6   which is unambiguously set forth word for word in the California Constitution, as just a starting

7   place that allows an employee to make further comment and therefore change the oath to suit that

8   employee's religious preference.  No court has supported this interpretation.  And this

9   interpretation, if adopted, would place public employers in the untenable position of conducting a

10  separate loyalty test, i.e., determining which employee's individual religious-accommodation

11  changes were consistent with the oath and which were not, something the California Constitution

12  explicitly forbids.  Cal. Const. Art. XX, § 3.  At the same time, forcing public employers to

13  simply accept an employee's changes without inquiry would make the uniform oath requirement

14  meaningless.

15      Any change to the oath requirement cannot be ad hoc but needs the legislature to make

16  changes to the law.  Proposed legislation S.B. 115 is one example of how the legislature might

17  make an exception for public employees who object to the wording of the oath.  Importantly,

18  however, the proposed legislation S.B. 115 never became law, and the legislature has not

19  addressed the topic in over ten years.

20      The failure of S.B. 115 to become law shows that California did not intend to make

21  modifications to the constitutionally required oath.  That legislation would have allowed a public

22  employee to "decline to take and subscribe the oath required by Section 3 of Article XX of the

23  California Constitution based on moral, ethical, or religious beliefs that conflict with his or her

24  ability to take and subscribe to the oath without mental reservation, if he or she is otherwise

25  willing and able to uphold the United States Constitution and the constitution and laws of this

26  state and to complete the duties of employment."  S.B. 115 § 2, Cal. Leg., 2009-2010 Reg. Sess.

27  (Cal. 2009).  Any person exempted from taking the oath, however, would have instead been

28  required to take a specific substitute oath.  *Id.*

4

But the proposed legislation did not become law because then-Governor Schwarzenegger vetoed the bill.  His statement that the bill was unnecessary because of existing religious accommodation law is a single sentence without further analysis or citation to legal authority. Veto Statement, S.B. Cal. Leg., 2009-2010 Reg. Sess. (Cal. 2009).  The Governor's beliefs or stated political reasons for vetoing are not binding on this Court and have no bearing on evaluating Plaintiff's claims in this case.  If anything, the failed legislation supports Defendants' motion to dismiss because it demonstrates the legislature's view that the constitutional and statutory oath requirement, as it existed then and today, cannot be modified unilaterally by state agencies.  Furthermore, the failed legislation shows that the legislature did not want to leave the question of suitable modification to public employers but instead wanted to mandate a narrowly tailored substitute oath for religious objectors.

Plaintiff's case shows the dangers of leaving oath modification decisions up to individual public employers to decide on a case-by-case basis.  Plaintiff denies that her "first duty to God" modification disclaimed the required oath.  Yet, her modification was exactly that—a disclaimer. Title VII, FEHA, and the federal and state constitutions do not give public employees license to put their allegiance to God above their fundamental duty to the law and the proper functioning of government.  And yet, according to Plaintiff, other state agencies have improperly allowed her insert her allegiance to God above her duties as a public employee, in contravention of the law. By qualifying her oath, she calls into question her fitness for public service.  The State Controller therefore was justified in requiring an unqualified oath as a condition of employment.

Moreover, the Office of the State Controller was required to adhere to the oath requirement strictly unless a court ruled otherwise.  *Valdes v. Cory*, 139 Cal.App.3d 773, 780 (1983) (state agencies have a constitutional duty to comply with a challenged statute unless and until an appellate court declares the statute unconstitutional).  Therefore, the Office of the State Controller could not, as Plaintiff suggests, explore alternatives to the oath requirement without first receiving direction – and an exemption –  from the legislature or the courts.

**B.    Modifying the Oath Is Undue Hardship Because Oath is Required By Law**

Plaintiff's claims amount to an attack on the public employer for following a constitutional law it did not create and has no power to change.  For this reason, her defective claims are different from the typical Title VII and FEHA religious accommodation cases involving an employer's own requirements, such as scheduling, dress codes, and work duties.  All of the cases Plaintiff cites fall into these typical non-legal categories initiated by the employer.  *Anderson v. Gen. Dynamics Convair Aerospace Div.*, 589 F.2d 397 (9th Cir. 1978) (collective bargaining agreement requiring employees to be a union member); *Tooley v. Martin-Marietta Corp.,* 648 F.2d 1239 (9th Cir. 1981) (same); *Opuku-Boateng v. California*, 95 F.3d. 1461 (9th Cir. 1996) (requirement to work some Saturday shifts).  Typical cases involve a fact-specific inquiry into an employer's justification for denying a religious accommodation for undue hardship and whether it would cause more than a de minimis cost to the employer.  FEHA also outlines factors to consider for undue hardship.  Calif. Gov. Code § 12926(u).  These factors, while helpful in the typical reasonable accommodation case, are unnecessary in this case because the public employer is not at liberty to modify or waive the legally mandated oath.

The more relevant cases are the ones Defendants cited and other similar cases where the challenged employer policy stems from a federal or state law requirement.  Like in the social-security number cases (*Sutton v. Providence St. Joseph Medical Center*, 192 F.3d 826 (9th Cir. 1999) and *Seaworth v. Pearson*, 203 F.3d 1056 (8th Cir. 2000)) and the religious dagger case (*Tagore v. United States*, 735 F.3d 324 (5th Cir. 2013)), the oath requirement is not the Office of State Controller's "employer policy" but is rather a constitutional and statutory requirement for all state employees.

Similarly, in *Bhatia v. Chevron U.S.A., Inc.*, 734 F.2d 1382 (9th Cir. 1984), the challenged policy requiring certain employees such as machinists to shave their beards so their respirator would be properly sealed against toxic gases was implemented to comply with California's Occupational Safety and Health Administration (OSHA) standards.  The court held that accommodating the employee's request to keep his beard and keep working as a machinist would

6

1    be an undue hardship because Chevron would risk liability for violating California's OSHA

2    standards.

3        Simply put, an employer can establish undue hardship if the accommodation requested is

4    contrary to federal or state law.  And, contrary to Plaintiff's assertion that Defendants cannot win

5    on undue hardship at the pleadings state, *Sutton* is an example of a case dismissed on a 12(b)(6)

6    motion.  It is undisputed here that the loyalty oath is legally required by the state constitution.

7        Furthermore, Plaintiff's FEHA claim is particularly not viable because it is subordinate to

8    the state constitution, the more supreme law.  In fact, FEHA expressly exempts arguably

9    discriminatory employment practices that are "otherwise required by law."  2 C.C.R. § 11010(f).

10   Also, when there is no precedent for a substantive point of discrimination law under state law,

11   courts look for guidance to precedent under Title VII.  *Los Angeles County Dept. of Parks &*

12   *Recreation v. Civil Services Comm'n* (1992) 8 Cal.App.4th 273, 280; *See Opuku-Boateng v. State*

13   *of Calif.*, 95 F.3d 1461, 1468 (citing a Title VII case to define "undue hardship" under FEHA).

14       **C.    Title VII and FEHA Validate the Oath Requirement**

15       The oath requirement, and oath requirements like it, predate Title VII and FEHA.  If public

16   employee oaths were deemed contrary to the laws, those concerns could have been addressed in

17   drafting Title VII and FEHA, but they were not.  Oaths have long been a near-universal

18   requirement for public employees at all levels of government.  The fact that neither law prohibits

19   public employee oaths signals that the drafters were not concerned about oaths.

20       Plaintiff confuses the reach of Title VII.  Title VII, Section 708 is not a preemption clause

21   but rather a "savings" clause that expressly validates state laws to the extent they do not conflict

22   with Title VII's purpose and effect.  Moreover, Title XI, Section 1104 of Title XI, applicable to

23   all titles of the Civil Rights Act, establishes that Title VII should not be construed as "invalidating

24   any provision of State law unless such provision is inconsistent with any of the purposes of this

25   Act, or any provision thereof."  42 U.S.C. § 2000h–4.

26       The case Plaintiff cites illustrates how narrow preemption is in invalidating state law,

27   especially state constitutional law.  In *Malabed v. N. Slope Borough,* 335 F.3d 864, 874 (9th Cir.

28   2003), the court held that the Title VII clause allowing for Native American employment

7

1  preferences did not preempt or invalidate the Equal Protection Clause of Alaska's constitution,

2  which prohibited preferential treatment for tribal members in employment.  As the court noted,

3  the beginning presumption is that Congress did not intend to preempt state law and, if there is any

4  doubt about congressional intent, courts should err on the side of caution, finding no preemption.

5  *Id.* at 869 (citations omitted).

6        Here, California's constitutional oath requirement, like other state and federal oath

7  requirements, is presumed to be valid and consistent with the purpose of Title VII.  Only laws that

8  *hinder* the protection of civil rights are inconsistent with Title VII's purpose, and thus subject to

9  preemption.  *Bohemian Club v. Fair Employemnt & Housing Com.*, 187 Cal.App.3d 1, 17 (1986).

10  California's oath requirement in no way hinders Title VII's overriding objective of eliminating

11  employment discrimination.  In fact, oath requirements work towards Title VII's goal by

12  establishing a uniform oath for all employees regardless of race, sex, or religion, not requiring the

13  forsaking of religious beliefs or referencing religion, and by prohibiting any other test of loyalty.

14        Plaintiff's reliance on two isolated EEOC rulings are similarly unavailing.  The rulings are

15  conclusory and lack any precedential value.  While the EEOC has authority to issue "suitable

16  procedural regulations" to enforce Title VII (see 42 U.S.C. § 2000e-12), it lacks authority to

17  promulgate substantive rules or regulations that have the force of law.  *General Elec. Co. v.*

18  *Gilbert*, 429 U.S. 125, 141 (1976) (superseded by statute on other grounds as recognized by *Shaw*

19  *v. Delta Air Lines, Inc.*, 463 US 85, 103 (1983)).  The rulings Plaintiff cites in support of its

20  position are of no moment.  The EEOC cited no cases to support its conclusions, and no court has

21  relied on the EEOC's conclusions to find liability for administering a legally-required oath.

22     

### III.   Plaintiff's Novel Constitutional Claims (#3-4) Fail Because California's Oath Requirement Does Not Infringe Free Exercise of Religion

23

24        Plaintiff argues that Office of the State Controller violated her constitutional rights, not by

25  administering the required oath, but by rejecting her proposed modification.  This theory has no

26  legal merit and would transform every employment accommodation request and rejection into a

27  constitutional violation.  There are no allegations that the Office of the State Controller prohibited

28  Plaintiff from expressing her beliefs or practicing her religion.

1    As the Supreme Court has held, no constitutional right is infringed by an oath to abide by

2    the constitutional system in the future.  *Cole v. Richardson*, 405 U.S. 676, 686 (1972).  By

3    rejecting Plaintiff's proposed modification, the Office of the State Controller was doing nothing

4    more than administering this constitutional oath.  When she refused, the Office of the State

5    Controller had no choice but to rescind its offer of public employment.

6    The free-exercise cases Plaintiff cites do not support her position.  *Sherbert v. Verner*, 374

7    U.S. 398 (1963) was abrogated by the Supreme Court in *Emp. Div. Dep't of Hum. Res. v. Smith*,

8    494 U.S. 872 (1990).  In *Smith*, the Supreme Court held that, because respondents' ingestion of

9    peyote was prohibited under Oregon law, and because that prohibition was constitutional, Oregon

10   could, consistent with the Free Exercise Clause, deny respondents unemployment compensation

11   when their dismissal results from use of the drug.  *Id.* at 890.  As the Court explained, "if

12   prohibiting the exercise of religion . . . is . . . merely the incidental effect of a generally

13   applicable and otherwise valid provision, the First Amendment has not been offended."  *Id.* at

14   878.  The Court also noted that its "cases do not at their farthest reach support the proposition that

15   a stance of conscientious opposition relieves an objector from any colliding duty fixed by a

16   democratic government."  *Id.* at 882 (citations omitted).  Under either the federal or state

17   constitution, Plaintiff's religious objections to a valid constitutional oath requirement do not

18   relieve her of her duty to take the oath as a public employee.  Thus, her constitutional claims fail.

19   Not only are Plaintiff's constitutional claims baseless, there is no meaningful remedy

20   available in this lawsuit.  Plaintiff appears to agree that the Office of the State Controller should

21   be dismissed from her Section 1983 claim under Fed. R. Civ. P. 12(b)(1) or (6).  She also agrees

22   that she is limited to prospective injunctive and declaratory relief.  Therefore, Plaintiff's claim for

23   monetary damages or other retrospective relief under Section 1983 should be dismissed under

24   Fed. R. Civ. Pr. 12(b)(1) or (6).  Because Plaintiff is no longer seeking a job with the Office of the

25   State Controller, there is no meaningful injunctive or declaratory relief available.  While nominal

26   damages are theoretically available and might preserve her constitutional claims from being

27   defeated on mootness grounds under the just-released Supreme Court decision *Uzuegbunam v.*

28

9

1   *Preczewski*, No. 19-968, 2021 WL 8501106 (U.S. Mar. 8, 2021), pursuing these constitutional

2   claims amounts to an improper advisory opinion.

3                                    **CONCLUSION**

4          California's constitutionally mandated loyalty oath has long been upheld by federal courts

5   and does not infringe on any religious rights.  Its purpose is a laudable one, to assure that

6   government employees affirm their allegiance to the federal and state constitutions.  The oath is

7   necessary as recent events in Washington D.C. have illustrated.  Because plaintiff fails to state

8   any cognizable claim for relief, all of her claims should be dismissed without leave to amend.

9

10  Dated:  March 16, 2021                        Xavier Becerra
                                                  Attorney General of California

11

12
                                                   /s/ Kelsey Linnett
13                                                Kelsey Linnett
                                                  Deputy Attorney General
14                                                *Attorneys for Office of the California State*
                                                  *Controller and State Controller Betty T. Yee*
15  OK2020900414

16

17

18

19

20

21

22

23

24

25

26

27

28

Reply to Motion to Dismiss (2:20-cv-02081 JAM-DB)