# Exhibit A

David R. Carpenter (SBN 230299)*
drcarpenter@sidley.com
Kristina Martinez (SBN 335747) *
kmartinez@sidley.com
SIDLEY AUSTIN LLP
350 S. Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 896-6000
Facsimile: (213) 896-6600

*Attorneys for Amici Curiae
Profs. Daniel Conkle, Richard Garnett, and
Gregory Sisk in Support of Plaintiff Brianna Bolden-Hardge*
(Additional counsel listed on following page)

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BRIANNA BOLDEN-HARDGE,<br><br>    Plaintiff,<br><br>    v.<br><br>OFFICE OF THE CALIFORNIA STATE CONTROLLER, et al.,<br><br>    Defendants. | Case No. 2:20-cv-02081-JAM-SCR<br><br>**AMICI CURIAE BRIEF OF LAW PROFS. DANIEL CONKLE, RICHARD GARNETT, AND GREGORY SISK IN SUPPORT OF PLAINTIFF BRIANNA BOLDEN-HARDGE**<br><br>Assigned to:    Hon. John A. Mendez<br><br>Hearing Time:    1:00 pm<br>Hearing Date:    June 17, 2025<br>Hearing Location:    Courtroom 6, 14th Floor<br><br>Action Filed:    October 19, 2020 |

*Designated Counsel for Service

*Additional Attorneys for Amici Curiae*

Brian P. Morrissey *(pro hac vice pending)*
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
Telephone: (202) 736-8000
bmorriss@sidley.com

Alec J. Silvester *(pro hac vice pending)*
Jonathan R. Lesgart *(pro hac vice pending)*
Halle E. Alitz *(pro hac vice pending)*
SIDLEY AUSTIN LLP
1001 Brickell Bay Drive, Suite 900
Miami, FL 33131
Telephone: (305) 391-5100
asilvester@sidley.com
jonathan.lesgart@sidley.com
halle.alitz@sidley.com

Nicholas R. Reaves *(pro hac vice pending)*
YALE FREE EXERCISE CLINIC
1919 Pennsylvania Ave., Suite 400
Washington, DC 20006
Telephone: 202-349-7212
nicholas.reaves@yale.edu

# **TABLE OF CONTENTS**

INTEREST OF *AMICI CURIAE* ........................................................................................................6

SUMMARY OF ARGUMENT ..........................................................................................................6

ARGUMENT .....................................................................................................................................7

    I.    THE CONTROLLER CANNOT SHOW THAT ACCOMMODATING BOLDEN-HARDGE IMPOSES A SIGNIFICANT DIFFICULTY OR EXPENSE ON ITS BUSINESS……………………………………………………………………………………7

        A.    *Groff* confirms that an employer must show "substantial increased costs in relation to the conduct of its particular business." .....................7

        B.    The Controller's speculative harms do not constitute undue hardship. .9

        C.    The Controller cannot simply point to state law to circumvent Title VII's protections. ................................................................................11

    II.    THE HISTORICAL TRAJECTORY OF OATH ACCOMMODATIONS DEMONSTRATES THE WEAKNESS OF THE CONTROLLER'S POSITION. ............12

        A.    Oaths were an instrument of religious persecution in English history. ...............................................................................................................12

        B.    The Controller's interest in rigid enforcement of its loyalty oaths is inconsistent with First Amendment principles deeply rooted in American history ................................................................................12

CONCLUSION ................................................................................................................................13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bazinet v. Beth Israel Lahey Health, Inc.*,
   113 F.4th 9 (1st Cir. 2024) ................................................................................................ 8

*Bessard v. Cal. Cmty. Colleges*,
   867 F. Supp. 1454 (E.D. Cal. 1994) ................................................................................ 10

*Beuca v. Washington State Univ.*,
   No. 23-35395, 2024 WL 3450989 (9th Cir. July 12, 2024) .............................................. 8

*Bolden-Hardge v. Office of the Cal. State Controller*,
   63 F.4th 1215 (9th Cir. 2023) .................................................................................... 11, 12

*Bolden-Hardge v. Office of the Cal. State Controller*,
   No. 21-15660 (9th Cir. Mar. 8, 2022) ......................................................................... 9, 10

*Draper v. United States Pipe Foundry Co.*,
   527 F.2d 515 (6th Cir. 1975) ............................................................................................ 9

*E.E.O.C. v. Townley Eng'g & Mfg. Co.*,
   859 F.2d 610 (9th Cir. 1988) .......................................................................................... 11

*Groff v. Dejoy*,
   600 U.S. 447 (2023) ................................................................................................ passim

*Keene v. City & Cnty. of San Francisco*,
   No. 24-1574, 2025 WL 341831 (9th Cir. Jan. 30, 2025) ................................................. 9

*Keyishian v. Bd. of Regents*,
   385 U.S. 589 (1967) ....................................................................................................... 13

*Smith v. Pyro Mining Co.*,
   827 F.2d 1081 (6th Cir. 1987) ......................................................................................... 9

*Tooley v. Martin-Marietta Corp.*,
   648 F.2d 1239 (9th Cir. 1981) .................................................................................... 9, 10

*Torcaso v. Watkins*,
   367 U.S. 488 (1961) ....................................................................................................... 13

*Vogel v. Cnty. of Los Angeles*,
   68 Cal.2d 18 (1967) ....................................................................................................... 13

**Statutes**

42 U.S.C. § 2000e(j) .................................................................................................................6

Levering Act of 1950 ..............................................................................................................13

**Other Authorities**

First Amendment ...............................................................................................................12, 13

*Charles II, 1672: An Act for preventing Dangers which may happen from Popish Recusants*, Statutes of the Realm: Volume 5, 1625-80 (Ed. John Raithby 1819), https://perma.cc/TM8L-PU8K ..................................................................................12

*The Debates in the Several State Conventions on the Adoption of the Federal Constitution*, vol. 4-5, at 198 (J.B. Lippincott ed., 1941) ............................................13

Frederick B. Jonassen, *"So Help Me?": Religious Expression and Artifacts in the Oath of Office and the Courtroom Oath*, 12 Cardozo Pub. L. Pol'y & Ethics J. 322 (2014) .......................................................................................................................12

Hadfield, Andrew, *Lying in Early Modern English Culture: From the Oath of Supremacy to the Oath of Allegiance* (Oxford, 2017) ................................................12

John Miller, *Popery and Politics in England 1660-1688* 67–72 (1973) ......................................12

**INTEREST OF *AMICI CURIAE*[1]**

*Amici* are all leading scholars of the law of government and religion:

- Prof. Daniel Conkle (Indiana University Maurer School of Law).
- Prof. Richard Garnett (University of Notre Dame Law School).
- Prof. Gregory Sisk (University of St. Thomas School of Law).

They are signing this brief because they are interested in the sound application and development of 42 U.S.C. § 2000e(j)'s ("Title VII") religious accommodation provision. As is the norm for academics, they are representing only their own views, and not those of their institutions (or of any other institution).

**SUMMARY OF ARGUMENT**

The Controller cannot demonstrate that accommodating Bolden-Hardge's religious beliefs would impose an "undue hardship" on "the conduct of [the Controller's] business" as required under Title VII. 42 U.S.C. § 2000e(j). As the Supreme Court's *Groff v. DeJoy* decision clarified, an "undue hardship" does not mean anything more than a "de minimis" cost, as prior precedent had suggested. 600 U.S. 447, 470 (2023) ("both parties agree that the '*de minimis*' test is not right"). Instead, an employer must demonstrate "substantial additional costs in relation to the conduct of its particular business" before denying a religious accommodation under Title VII. *Id*.

The Office of the California State Controller ("the Controller") fails to meet Title VII's clarified "undue hardship" standard for two reasons. *First*, while the Controller makes claims about costs that *might* accrue from granting an accommodation to its oath requirement, precedent demonstrates that speculative claims and hypothetical future harms do not amount to an "undue hardship." And the fact that many other state agencies have successfully accommodated Bolden-Hardge without issue confirms that any harm is purely speculative. *See* Mem. of Points & Authorities 8–9, ECF No. 50-1. Title VII, properly understood, prevents employers from refusing to hire individuals based on stereotypes and speculative fears of accommodating minority religious exercise.

---

[1] No party or party's counsel has authored this brief in whole or in part, or contributed money to fund preparing or submitting this brief. No person has contributed money that was intended to fund preparing or submitting the brief, except that Sidley Austin LLP paid the expenses involved in filing this brief. All parties have consented to the filing of the brief. This brief is prepared in part by a clinic operated by Yale Law School but does not purport to present the School's institutional views, if any.

*Second*, the Controller cannot claim that compliance with state law creates a *per se* undue hardship. As an initial matter, *Groff* is clear that what matters are the *real costs* associated with an accommodation. State law requirements thus matter only to the extent that they can show that an accommodation would impose *actual increased costs*. The Controller points to no such costs, relying only on its unwillingness to deviate from standard practice. Moreover, if undue hardship were presumed wherever an accommodation conflicted with state law, [2] then a state could legislate its way around the requirements of Title VII by passing laws that explicitly forbid accommodations. But federal law supersedes conflicting state law, not the other way around. As the Ninth Circuit in this case already held, the Controller's argument that any oath accommodation is a *per se* undue hardship flips the Supremacy Clause on its head.

The Controller's rigid approach to its loyalty oath also contradicts the historical trajectory of religious accommodations. From the Founding Era's protection against religious tests for office to today's naturalization oath modification, oaths have evolved toward greater flexibility. The Controller's refusal to offer any accommodation to Bolden-Hardge is a troubling departure from this American tradition.

**ARGUMENT**

**I.    THE CONTROLLER CANNOT SHOW THAT ACCOMMODATING BOLDEN-HARDGE IMPOSES A SIGNIFICANT DIFFICULTY OR EXPENSE ON ITS BUSINESS.**

**A.    *Groff* confirms that an employer must show "substantial increased costs in relation to the conduct of its particular business."**

In *Groff,* the Supreme Court explained the kind of "undue hardship" that is required for an employer to deny a religious accommodation. As the Court put it, an "'undue hardship' is shown when a burden is substantial in the overall context of an employer's business." *Groff v. Dejoy*, 600 U.S. 447, 468 (2023). Examining the ordinary meaning of the text, the Court explained that the term "hardship" means "'something hard to bear' . . . something more severe than a mere burden." Id. at 468–69. Understood in this light, even just the word "hardship" is inconsistent with the "de minimis" standard

---

[2] Of course, Bolden-Hardge also persuasively argues that state law *itself* permits an accommodation. *See* Mem. of Points & Authorities 17–19, ECF No. 50-1.

7

BRIEF OF AMICI CURIAE LAW PROFS ISO PL.'S MOT. SUMM. J.

that prevailed before *Groff*. Yet, compounding this interpretive error, courts before *Groff* failed to give meaning to Title VII's inclusion of the modifier "undue." In *Groff*, the Court explained that adding "undue" meant that "the requisite burden, privation, or adversity must rise to an 'excessive' or 'unjustifiable' level." *Id.* at 469. *Groff*'s interpretation of "undue hardships" thus precludes employers from relying solely on minor or incidental costs that might come along with offering a religious accommodation. *See Bazinet v. Beth Israel Lahey Health, Inc.*, 113 F.4th 9, 18 (1st Cir. 2024) ("*Groff* clarified that the standard is more rigorous than previously thought.").

*Groff* also clarified that employers must consider an array of accommodations before denying an employee's request. Title VII requires employers to "reasonably accommodate an employee's practice of religion, not merely [to] assess the reasonableness of a particular possible accommodation." *Id.* at 473. For instance, an employer cannot deny an employee's request for a religious accommodation to observe their sabbath on the grounds that it might require other employees to work overtime without considering whether other accommodations would be feasible. Instead, the employer has the burden of demonstrating that it has explored alternative solutions, such as allowing voluntary shift swaps, to determine whether an accommodation is possible. *Id.* at 471 (affirming that in most cases, "no undue hardship is imposed by temporary costs, voluntary shift swapping, occasional shift swapping, or administrative costs"). And indeed, an employer would also have the burden of showing that paying overtime wages would actually impose a significant difficulty or expense on its business. Similarly, *Groff* makes clear that "courts must apply th[is] test in a manner that takes into account all relevant factors in the case at hand." *Id.* at 470. This means courts should consider, among other things, "the particular accommodations at issue and their practical impact in light of the nature, size and operating cost of [an] employer." *Id.* at 470–71.

With *Groff*'s heightened standard in sight, it is clear that proving an undue hardship is a high bar. Indeed, since *Groff*, the Ninth Circuit's cases have undergone a marked shift from the pre-existing *Hardison*-era analysis. For instance, the Ninth Circuit recently reversed the dismissal of a religious accommodation claim against Washington State University. *See Beuca v. Washington State Univ.*, No. 23-35395, 2024 WL 3450989, at *2 (9th Cir. July 12, 2024) ("[A]n undue hardship is 'substantial in the overall context of an employer's business.'"). In a similar case, the Ninth Circuit found that the

8

government failed to meet *Groff*'s "substantial increased cost" standard when it could only show minimal costs for granting religious exemptions to vaccine requirements. *See Keene v. City & Cnty. of San Francisco*, No. 24-1574, 2025 WL 341831, at *2 (9th Cir. Jan. 30, 2025) (explaining that the employer failed to "seriously consider[]" potential religious accommodations, and has failed to show proposed accommodations "imposed an 'undue hardship' given their minimal cost").

### B. The Controller's speculative harms do not constitute undue hardship.

The Controller's denial of any accommodation in this case violates Title VII because the Controller cannot demonstrate that Bolden-Hardge's proposed oath statement would impose "substantial increased costs in relation to the conduct of [the State's] particular business." *Groff*, 600 U.S. at 468. The Controller asserts that accommodating Bolden-Hardge will impose a cost because it undermines its ability to uniformly ensure its employees are committed to upholding the rule of law. "Adopting Appellant's model for government workers," the Controller continues, "would open the door to accommodating racist or other fringe religious beliefs and ideologies." Appellees' Opening Brief at 2, *Bolden-Hardge v. Office of the Cal. State Controller*, No. 21-15660 (9th Cir. Mar. 8, 2022). This argument doesn't work for two reasons.

*First*, mere speculation won't do. Title VII requires an employer to "present evidence of undue hardship; it cannot rely merely on *speculation*." *Smith v. Pyro Mining Co.*, 827 F.2d 1081, 1086 (6th Cir. 1987) (emphasis added). Courts are particularly skeptical when employers present only hypothetical hardships. For instance, an employer is unlikely to meet its burden of proof by articulating harms that "might be caused by an accommodation that never has been put into practice. The employer is on stronger ground when he has attempted various methods of accommodation and can point to hardships that actually resulted." *Draper v. United States Pipe Foundry Co.*, 527 F.2d 515, 520 (6th Cir. 1975). *See also Tooley v. Martin-Marietta Corp.*, 648 F.2d 1239, 1243 (9th Cir. 1981) ("A claim of undue hardship cannot be supported by merely conceivable or hypothetical hardships.").

The Controller's alleged "undue hardship" is entirely speculative. The Controller rests its argument on sweeping claims that public employees must have a "unqualified commitment to the constitution." *Id.* But the Controller has failed to point to any concrete, as opposed to speculative and hypothetical, situations in which Bolden-Hardge's oath accommodation would impair its operations.

1  In the numerous government positions Bolden-Hardge has already held, there is no evidence that her
2  beliefs have significantly impaired the work of her employer. The Controller, therefore, fails to meet
3  its burden of demonstrating that granting an oath accommodation would create "substantial increased
4  costs in relation to the conduct of its particular business." *Groff*, 600 U.S. at 470. And, should the
5  Controller be required to accommodate Bolden-Hardge, it can always address future harms (however
6  unlikely) if and when they arise. E.g., *Bessard v. Cal. Cmty. Colleges*, 867 F. Supp. 1454, 1465 (E.D.
7  Cal. 1994).

8        The Controller's claim that it may be held liable for violating state law (more on this *infra* I.C)
9  is likewise too speculative to satisfy *Groff*. Indeed, the fact other state employers' ability to provide
10 the oath accommodation compounds the Controller's failure to demonstrate "substantial increased
11 costs in relation to the conduct of its particular business." *Groff*, 600 U.S. at 468. In particular, it
12 undermines the Controller's claim that there is "no alternative employment practice that has a less-
13 disparate impact and also serves the employer's legitimate business interests." Appellees' Opening
14 Brief at 13, *Bolden-Hardge v. Office of the Cal. State Controller*, No. 21-15660 (9th Cir. Mar. 8,
15 2022). Bolden-Hardge worked for three other state entities which were able to accommodate her
16 without incurring significant, or even minimal costs. *See* First Amended Complaint, ECF No. 29, at
17 ¶¶ 8-9. The Controller has not articulated any reason why it is uniquely positioned to incur "substantial
18 increased costs" from accommodating Bolden-Hardge when multiple other state entities faced no such
19 burden when doing so.

20       *Second*, the Controller cannot cite concerns about hypothetical future employees as a reason
21 to deny Bolden-Hardge an accommodation. *Groff* expressly notes that "animosity" toward a religion
22 or toward granting an accommodation cannot constitute an "undue hardship." The Court observed that
23 "[i]f bias or hostility to a religious practice or a religious accommodation provided a defense to a
24 reasonable accommodation claim, Title VII would be at war with itself." *Groff*, 600 U.S. at 472. If an
25 employer's or fellow employees' dislike of a religion could be considered a valid hardship, it would
26 effectively permit discrimination under the guise of business concerns and render Title VII ineffectual.
27 *Id.* (most "impacts" on coworkers "off the table"). While the Controller need not permit
28 accommodations that actually interfere with important functions, it cannot categorically refuse to offer

10

an accommodation based on speculative concerns about other future employees. *See E.E.O.C. v. Townley Eng'g & Mfg. Co.*, 859 F.2d 610, 615 (9th Cir. 1988) ("[E]mployer must show that the accommodation of a religious practice would cause 'undue hardship on the conduct of the employer's business.'").

### C. The Controller cannot simply point to state law to circumvent Title VII's protections.

Resisting this conclusion, the Controller has argued that Bolden-Hardge's accommodation is a *per se* substantial burden because state law imposes the oath requirement. *See* Brief for Appellees at 25–26, 32–33, *Bolden-Hardge v. Office of the Cal. State Controller*, 63 F.4th 1215 (9th Cir. 2023) (No. 21-15660). But *Groff* leaves no opening for this sort of argument. The ordinary meaning of the phrase "undue hardship," as a unanimous Supreme Court observed in *Groff*, requires a showing of "substantial additional costs or substantial expenditures." *Groff*, 600 U.S. at 469 (quoting *Hardison*, 432 U.S. at 83 n.14 (cleaned up)). Unless the Controller can point to more than the mere metaphysical burdens that it claims come with offering an accommodation under state law, this argument must fail. *Cf. Townley Eng'g & Mfg. Co.*, 859 F.2d at 615 ("spiritual hardship" to employer of offering religious accommodation unlikely to "impose on a corporate employer the required level of hardship").

Where Title VII, a federal law, mandates an accommodation to secure a person's constitutionally protected freedom of religion, the Controller cannot get around that mandate by pointing to a contrary state-law provision. As the Ninth Circuit in this very case already explained, the Controller's argument "would essentially permit states to legislate away any federal accommodation obligation, raising Supremacy Clause concerns." *Bolden-Hardge v. Office of Cal. St. Controller*, 63 F.4th 1215, 1225 (9th Cir. 2023). Here, "the Controller's Office is part of the very state government that is responsible for creating and enforcing the oath requirement," and there is no indication that granting an accommodation would subject the Office to any sanction by some higher state authority. Id. Accordingly, consistent with Groff and the Ninth Circuit's opinion in this case, the Court here must look to the "risk of enforcement" and to actual *costs*, instead of looking solely at state law requirements. *Id.* And here, as the Ninth Circuit concluded, "enforcement is unlikely." *Id.* at 1226.

Applying the Controller's argument to private employers only further demonstrates its error.

A corporation could not deny its employees a religious accommodation under Title VII simply by claiming that it would be a *per se* burden to grant an exception from the employer's internal policies. There is no reason state employers should be treated any differently.

## II.   THE HISTORICAL TRAJECTORY OF OATH ACCOMMODATIONS DEMONSTRATES THE WEAKNESS OF THE CONTROLLER'S POSITION.

### A.   Oaths were an instrument of religious persecution in English history.

The strict enforcement of loyalty oaths has a long and troubling history. In England in 1534, King Henry VIII imposed the Oath of Supremacy, which required his subjects to acknowledge the monarch as the Supreme Head of the Church of England. Frederick B. Jonassen, *"So Help Me?": Religious Expression and Artifacts in the Oath of Office and the Courtroom Oath*, 12 Cardozo Pub. L. Pol'y & Ethics J. 322 (2014). *See* Hadfield, Andrew, *Lying in Early Modern English Culture: From the Oath of Supremacy to the Oath of Allegiance*, 39–50 (Oxford, 2017). This oath forced Catholics to choose between allegiance to the crown and adherence to their faith. *Id.* Refusal often resulted in execution for treason, as exemplified by the case of St. Thomas More. *Id.* In the centuries that followed, the Crown continued to impose strict oaths to exclude religious minorities from public life. For example, the Test Act of 1673 required all public officials to swear oaths repudiating core Catholic teachings. Jonassen, *supra*, at 324–25 ("The readiness and frequency with which the British government imposed contradictory oaths forced subjects to betray religious beliefs, political loyalties, and, of course, previous oaths."); s*ee Charles II, 1672: An Act for preventing Dangers which may happen from Popish Recusants*, Statutes of the Realm: Volume 5, 1625–80 (Ed. John Raithby 1819), https://perma.cc/TM8L-PU8K. Catholics were thus effectively barred from government service, institutionalizing a system of religious discrimination. *See* John Miller, *Popery and Politics in England 1660-1688* 67–72 (1973). Such laws established dangerous precedent that led to the widespread use of oaths as instruments of religious coercion and exclusion.

### B.   The Controller's interest in rigid enforcement of its loyalty oaths is inconsistent with First Amendment principles deeply rooted in American history.

From the Founding Era onward, American history shows a trend toward accommodating religious conscience. Aware of England's harmful oath practices, the Framers incorporated protections in Article VI of the Constitution to prohibit religious tests for public office. James Iredell captured this

ethos during the ratification debates when he affirmed that oaths need only be administered in a form binding on the taker's conscience. Jonathan Elliot, *The Debates in the Several State Conventions on the Adoption of the Federal Constitution*, vol. 4–5, at 198 (J.B. Lippincott ed., 1941). And, while many states initially imposed exclusionary oath requirements, these were slowly rejected in favor of accommodating religious minorities. Jonassen, *supra*, at 318–21. This trend also carried over to the courts. In *Torcaso v. Watkins*, 367 U.S. 488 (1961), the Supreme Court struck down a Maryland law requiring public officials to affirm a belief in God. During the McCarthy era, the California Supreme Court invalidated the Levering Act of 1950, which had required all state employees to swear they were not members of organizations advocating government overthrow. *Vogel v. Cnty. of Los Angeles*, 68 Cal.2d 18 (1967). And in *Keyishian v. Bd. of Regents*, 385 U.S. 589 (1967), the Supreme Court found New York's loyalty oath requirements for educators unconstitutionally vague and an impermissible infringement on the First Amendment. These decisions reaffirm that government can function effectively without rigid oath requirements that infringe on constitutional rights.

The Controller's refusal to accommodate Bolden-Hardge represents a troubling regression from this tradition of accommodation. The state is reimposing the coercive dilemma that oath accommodations were designed to prevent: forcing individuals to choose between faith and public service.

## CONCLUSION

This Court should grant Plaintiff Bolden-Hardge's Motion for Summary Judgment.

DATED: March 31, 2025

    Respectfully submitted,

    By: */s/ David R. Carpenter*
    David R. Carpenter, (SBN 230229)
    Kristina Martinez (SBN 335747)
    SIDLEY AUSTIN LLP
    350 S. Grand Avenue
    Los Angeles, CA 90071
    Telephone: (213) 896-6000
    drcarpenter@sidley.com
    kmartinez@sidley.com

Brian P. Morrissey *(pro hac vice pending)*
**SIDLEY AUSTIN LLP**
1501 K Street, N.W.
Washington, D.C. 20005
Telephone: (202) 736-8000
bmorriss@sidley.com

Alec J. Silvester *(pro hac vice pending)*
Jonathan R. Lesgart *(pro hac vice pending)*
Halle E. Alitz *(pro hac vice pending)*
**SIDLEY AUSTIN LLP**
1001 Brickell Bay Drive, Suite 900
Miami, FL 33131
Telephone: (305) 391-5100
asilvester@sidley.com
jonathan.lesgart@sidley.com
halle.alitz@sidley.com

Nicholas R. Reaves *(pro hac vice pending)*
**Yale Free Exercise Clinic**
1919 Pennsylvania Ave., Suite 400
Washington, DC 20006
Telephone: 202-349-7212
nicholas.reaves@yale.edu

**CERTIFICATE OF SERVICE**

I hereby certify that on March 31, 2025, I electronically filed the foregoing document(s) with the Court using CM/ECF system, thereby delivered by electronic means to all counsel of record.

By: */s/ David R. Carpenter*
David R. Carpenter