1

2

3

4

5

6                    UNITED STATES DISTRICT COURT

7                   EASTERN DISTRICT OF CALIFORNIA

8

9   BRIANNA BOLDEN-HARDGE,           No. 2:20-cv-02081-JAM-SCR

10                 Plaintiff,

11       v.                          **ORDER**

12   OFFICE OF THE CALIFORNIA
    STATE CONTROLLER, et al.,
13
                   Defendants.
14

15        Before the Court are cross-motions for summary judgment

16   brought by Brianna Bolden-Hardge ("Plaintiff") and the Office of

17   the California State Controller and seven of its employees

18   (collectively, "Defendants") on the issue of liability.  Pl.'s

19   Mot., ECF No. 50; Defs.' Mot., ECF No. 89.  The motions are fully

20   briefed.  See Pl.'s Opp'n, ECF No. 102; Defs.' Reply, ECF No.

21   106.  Defendants also bring a Motion to Exclude Certain Expert

22   Opinions.  See Mot. to Exclude, ECF No. 84; Opp'n to Mot. to

23   Exclude, ECF No. 98; Reply for Mot. to Exclude, ECF No. 99.  A

24   hearing on these motions was held in this Court on August 26,

25   2025.  For the reasons stated at the August 26 hearing and below,

26   the Court denies Defendants' motion to exclude, and grants in

27   part and denies in part the parties' cross-motions for summary

28   judgment.

                                    1

1                    I.   FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

2          A recitation of the entire factual background is unnecessary

3    given the parties intimate familiarity with this case.  The

4    pertinent summary is as follows: Plaintiff began working for the

5    Franchise Tax Board ("FTB") in 2011.  Gleiberman Decl., Ex. 1,

6    Bolden-Hardge Dep. 20:2-20, ECF No. 51-1.  In 2017, Plaintiff was

7    hired for a position with the State Controller's Office ("SCO").

8    Id. 69:15-70:6.  Before she could start her new position with

9    SCO, Plaintiff was asked to sign an oath that the California

10   Constitution requires public employees to take (hereinafter, "the

11   Oath").  Id. 74:20-76:10.  The Oath states:

12        I,_____, do solemnly swear (or affirm) that I will
          support and defend the Constitution of the United
13        States and the Constitution of the State of California
          against all enemies, foreign and domestic; that I will
14        bear true faith and allegiance to the Constitution of
          the United States and the Constitution of the State of
15        California; that I take this obligation freely, without
          any mental reservation or purpose of evasion; and that
16        I will well and faithfully discharge the duties upon
          which I am about to enter.
17

18   Cal. Const. art. XX, § 3.

19        Plaintiff told SCO employees that her religious beliefs

20   prevented her from signing the Oath.  Bolden-Hardge Dep. 76:24-

21   78:21.  After discussing the issue with an SCO employee,

22   Plaintiff wrote an addendum that she proposed attaching to the

23   signed Oath (hereinafter, "the Proposed Addendum").  Id. 79:4-18.

24   The Proposed Addendum stated:

25        I, [Plaintiff], vow to uphold the Constitutions of the
          United States and that of the State of California while
26        working in my role as an employee of the [SCO].  I will
          be honest and fair in my dealings and neither dishonor
27        the Office by word nor deed.  By signing this oath, I
          understand that I shall not be required to bear arms,
28        engage in violence, nor participate in political or

                                      2

1  military affairs.  Additionally, I understand that I am
2  not giving up my right to freely exercise my religion,
   nor am I denouncing my religion by accepting this
3  position.

4  Gleiberman Decl., Ex. 1E.  SCO did not allow Plaintiff to attach

5  the Proposed Addendum to the Oath and thereafter rescinded her

6  offer of employment because she would not sign the Oath without

7  accommodation.  Id. Ex. 1F.

8      Plaintiff brought suit in federal court against SCO and the

9  State Controller of California.  Complaint, ECF No. 1.  Upon

10 Defendants' motion, the Court dismissed with prejudice all

11 claims.  ECF No. 14.  The Ninth Circuit reversed.  ECF No. 25;

12 see also Bolden-Hardge v. Off. of California State Controller, 63

13 F.4th 1215 (9th Cir. 2023).  Upon remand, Plaintiff filed an

14 amended complaint against SCO and seven of its employees,

15 including the State Controller of California.[1]  First Amended

16 Complaint ("FAC"), ECF No. 29.  The parties now bring cross-

17 motions for summary judgment as to all claims.

18              II.   OPINION

19 A.   Legal Standard

20     Summary judgment is appropriate when the record, read in the

21

22 [1]At the August 26, 2025 hearing, the Court was informed that only
   three of the seven individual defendants named in the FAC have
23 been served.  Defendant Cohen is the current State Controller
   having replaced Defendant Betty Yee, the former State Controller.
24 Defendant Gerald Anderson was the Chief of Human Resources for
   the State Controller's Office at all times pertinent to this
25 case.  While Plaintiff brought two claims against these three
   individuals in their official and individual capacities for
26 alleged violations of the Federal and State Constitutions, no
   evidence has been presented that would permit any claims to go
27 forward against them.  Accordingly, these three individual
   Defendants are dismissed without prejudice.
28
                        3

1  light most favorable to the non-moving party, indicates "that

2  there is no genuine dispute as to any material fact and the

3  movant is entitled to judgment as a matter of law." Fed. R. Civ.

4  P. 56(a).  A genuine dispute of fact exists only if "there is

5  sufficient evidence favoring the nonmoving party for a jury to

6  return a verdict for that party." Anderson v. Liberty Lobby,

7  Inc., 477 U.S. 242, 249 (1986).  If the nonmoving party fails to

8  make this showing, "the moving party is entitled to a judgment as

9  a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 323

10 (1986).

11     B.    Requests for Judicial Notice

12     Under Federal Rule of Evidence 201, a district court may

13 take judicial notice of a fact that is "not subject to reasonable

14 dispute because it can be accurately and readily determined from

15 sources whose accuracy cannot reasonably be questioned." Fed. R.

16 Evid. 201(b)(2).  A court "may take judicial notice of a record

17 of a state agency not subject to reasonable dispute." City of

18 Sausalito v. O'Neill, 386 F.3d 1186, 1223 n.2 (9th Cir. 2004).

19     The parties each submit an unopposed request for judicial

20 notice ("RJN") relating to matters of state record.  Pl.'s RJN,

21 ECF No. 52; Defs.' RJN, ECF No. 92.  Because these documents are

22 proper for judicial notice, the Court grants the requests.

23     C.    Motion to Exclude Expert Opinions

24     Defendants bring a Motion to Exclude Certain Expert Opinions

25 of Dr. Paul Finkelman and Dr. Matthew Schmalz.  ECF No. 85.

26 Plaintiff argues that this motion was improperly filed, citing

27 the Pretrial Scheduling Order (ECF No. 39) and Local Rule 260.

28 See Opp'n to Mot. to Exclude at 1-3.  The Court disagrees, as

1    nothing in either authority cited by Plaintiff prohibits

2    Defendants from bringing the present motion.  As Defendants

3    observe, courts in this District routinely hear motions to

4    exclude expert testimony that are concurrently filed with motions

5    for summary judgment.  See Reply for Mot. to Exclude at 2.  As

6    such, Defendants' motion is properly before the Court.

7         At the outset, the Court denies as moot the motion as to Dr.

8    Finkelman because the Court did not find his opinions to be

9    particularly helpful or relevant in reaching its decision

10   regarding the cross-motions for summary judgment.  Dr. Schmalz's

11   testimony on the other hand, is critical to Plaintiff's Title VII

12   disparate impact claim and the motion to exclude portions of his

13   testimony needs to be resolved.

14        A motion to exclude expert testimony can be brought at the

15   summary judgment stage.  See Lust v. Merrell Dow Pharmaceuticals,

16   Inc., 89 F.3d 594, 597 (1996).  Courts apply the standard

17   outlined in Federal Rule of Evidence 702, which permits testimony

18   by experts qualified by "knowledge, skill, experience, training,

19   or education" to testify "in the form of an opinion or otherwise"

20   based on "scientific, technical, or other specialized knowledge"

21   if that knowledge will "help the trier of fact to understand the

22   evidence or to determine a fact in issue."  Fed. R. Evid. 702.

23   An expert's testimony must be "based on sufficient facts or

24   data," "the product of reliable principles and methods," and the

25   application of "the principles and methods to the facts of the

26   case."  Id.

27        "Rule 702 embodies the twin concerns of reliability and

28   helpfulness."  Stilwell v. Smith & Nephew, Inc., 482 F.3d 1187,

1   1192 (9th Cir. 2007) (cleaned up).  "Whether testimony is helpful

2   within the meaning of Rule 702 is in essence a relevancy

3   inquiry."  Hemmings v. Tidyman's Inc., 285 F.3d 1174, 1184 (9th

4   Cir. 2002).  "The test for reliability, however, is not the

5   correctness of the expert's conclusions but the soundness of his

6   methodology."  Stillwell, 482 F.3d at 1192 (cleaned up).  To be

7   reliable, the expert's testimony must have "a reliable basis in

8   the knowledge and experience of the relevant discipline.  The

9   district court must assess whether the reasoning or methodology

10  underlying the testimony is scientifically valid and properly can

11  be applied to the facts in issue, with the goal of ensuring that

12  the expert employs in the courtroom the same level of

13  intellectual rigor that characterizes the practice of an expert

14  in the relevant field."  United States v. Ruvalcaba-Garcia, 923

15  F.3d 1183, 1189 (9th Cir. 2019) (cleaned up).

16      The Court "not only has broad latitude in determining

17  whether an expert's testimony is reliable, but also in deciding

18  how to determine the testimony's reliability."  Hangarter v.

19  Provident Life & Acc. Ins. Co., 373 F.3d 998, 1017 (9th Cir.

20  2004) (citation omitted) (emphasis original).  "After an expert

21  establishes admissibility to the judge's satisfaction, challenges

22  that go to the weight of the evidence are within the province of

23  a fact finder, not a trial court judge.  A district court should

24  not make credibility determinations that are reserved for the

25  jury."  Pyramid Techs., Inc. v. Hartford Cas. Ins. Co., 752 F.3d

26  807, 814 (9th Cir. 2014).

27      In this case, Dr. Schmalz was retained by Plaintiff to

28  "provide expert analysis and possible testimony concerning the

6

1   beliefs and practices of Jehovah's Witnesses concerning oaths."

2   Musell Decl., Ex. C, Schmalz Decl. ¶ 2, ECF No. 98-1.  Dr.

3   Schmalz is a Professor of Religious Studies at the College of the

4   Holy Cross.  Id. ¶ 1.  He has published multiple research papers

5   and essays on Jehovah's Witnesses.  Id. ¶¶ 16-18.  When Dr.

6   Schmalz began teaching about this religious group, he "could not

7   find any course within any curriculum in the United States that

8   even briefly mentioned Jehovah's Witnesses."  Id. ¶ 12.  Dr.

9   Schmalz has served as "the academic expert commentator for

10  programs on television/digital platforms that have reported on

11  Jehovah's Witnesses," "provided expert commentary on Jehovah's

12  Witnesses for national media outlets," and is currently serving

13  as an expert consultant on pending legal cases "to provide

14  context on Watchtower beliefs and practices and the internal

15  dynamics shaping Jehovah's Witness life."[2]  Id. ¶¶ 19-20.

16      Defendants do not contest that Dr. Schmalz's testimony is

17  helpful, as it goes to the core of the disparate impact claim.

18  Defendants also do not substantively argue that Dr. Schmalz is

19  unqualified.  While they state that Dr. Schmalz has not published

20  research on Jehovah's Witnesses since 1998, they do not explain

21  why this gap in time precludes him from being qualified to opine

22  on matters in this case.  See Mot. to Exclude at 13.  Instead,

23  Defendants' principal argument is that portions of Dr. Schmalz's

24  opinions are so unreliable, speculative or constitute improper

25  legal conclusions that they must be excluded.  The Court

26

27  [2]Dr. Schmalz uses "Watchtower" to refer to the religious
    organization and "Jehovah's Witnesses" to refer to the members of
28  the organization.  Schmalz Decl. ¶ 5.  The Court follows suit.

1  disagrees.

2      The Court finds that Dr. Schmalz's opinions are "based on

3  sufficient facts or data" to survive Defendants' motion to

4  exclude.  <u>See</u> Fed. R. Evid. 702.  The primary issue regarding

5  this testimony in support of Plaintiff's Motion for Summary

6  Judgment is how much weight it should be given, not whether it is

7  admissible.  As noted above, once admissibility has been

8  established to the judge's satisfaction, challenges to the weight

9  of the evidence are decided by a jury, not the judge.

10     The Court denies Defendants' motion to exclude portions of

11 Dr. Schmalz's testimony in support of Plaintiff's Motion for

12 Summary Judgment without prejudice to Defendants renewing their

13 motion should Dr. Schmalz seek to testify at trial.

14     D.   <u>Title VII</u>

15          1.   <u>Applicability to State Oaths</u>

16     Defendants first argue that Title VII does not apply to

17 state oaths.  Defs.' Mot. at 11-16.  The Court disagrees.  As

18 Plaintiff points out, the Ninth Circuit in this case implicitly

19 held that Title VII applies to state oaths because it held that

20 Plaintiff plausibly pleaded a Title VII claim as to the Oath.

21 <u>See</u> Pl.'s Mot. at 4-5.  Moreover, the Ninth Circuit has elsewhere

22 applied Title VII to a state oath.  In <u>Lawson v. Washington</u>, a

23 Jehovah's Witness was hired as a cadet by the Washington State

24 Patrol.  296 F.3d 799, 802 (9th Cir. 2002).  The plaintiff

25 resigned because he believed that saluting the flag and taking an

26 oath of allegiance to the State of Washington conflicted with his

27 religious beliefs.  <u>Id.</u> at 802-803.  Upon appeal of a summary

28 judgment order, the Ninth Circuit held that the plaintiff's

8

1   religious beliefs conflicted with the Washington State Patrol's

2   employment requirements.  Id. at 804.  By finding that the

3   plaintiff satisfied the first part of a failure to accommodate

4   claim brought under Title VII, the Ninth Circuit implicitly found

5   that Title VII applied to state oaths.  See id. at 805.  Given

6   this binding precedent, the Courts holds that Title VII applies

7   to state oaths.

8                    2.   Failure to Accommodate

9        The parties move for summary judgment as to Plaintiff's

10  failure to accommodate claim under Title VII of the Civil Rights

11  Acts of 1964.  FAC ¶¶ 62-73.  This claim is analyzed under a two-

12  part framework.  "First, the employee must establish a prima

13  facie case by proving that (1) he had a bona fide religious

14  belief, the practice of which conflicted with an employment duty;

15  (2) he informed his employer of the belief and conflict; and

16  (3) the employer threatened him with or subjected him to

17  discriminatory treatment, including discharge, because of his

18  inability to fulfill the job requirements."  Heller v. EBB Auto

19  Co., 8 F.3d 1433, 1438 (9th Cir. 1993).  Second, "[o]nce an

20  employee establishes a prima facie case, the burden of proof then

21  shifts to the employer under the second part of the framework to

22  'establish that it initiated good faith efforts to accommodate

23  the employee's religious practices' or that it could not

24  reasonably accommodate the employee without undue hardship."

25  Lawson, 296 F.3d at 804 (quoting Heller, 8 F.3d at 1438).

26                    a.   Conflict

27       In this case, the Ninth Circuit held that Plaintiff's

28  "burden to allege a conflict with religious beliefs is fairly

                                9

1  minimal." Bolden-Hardge, 63 F.4th at 1223.  The court relied

2  upon the Supreme Court's decision in Thomas v. Review Board of

3  Indiana Employment Security Division, where the Court held in the

4  context of free exercise and employment that when the plaintiff

5  draws a line that they cannot cross due to religious beliefs, "it

6  is not for us to say that the line he drew was an unreasonable

7  one."  450 U.S. 707, 715 (1981).  Rather, the Court held, "The

8  narrow function of a reviewing court in this context is to

9  determine whether there was an appropriate finding that

10  petitioner terminated his work because of an honest conviction

11  that such work was forbidden by his religion."  Id. at 716

12  (emphasis added).

13      Plaintiff maintains that there are four conflicts between

14  her religious beliefs and taking the Oath without accommodation:

15  (1) the Oath's "true faith and allegiance" provision "presents an

16  actionable conflict with [Plaintiff's] religious belief that her

17  allegiance is first and foremost to God"; (2) the Oath's

18  requirement to "'defend . . . against all enemies, foreign and

19  domestic' presents a conflict with [Plaintiff's] religious

20  beliefs against pledging to bear arms"; (3) the Oath conflicts

21  with Plaintiff's "religious beliefs about maintaining political

22  neutrality"; and (4) "signing the unaccommodated Oath without

23  'any mental reservation,' as it provides, would have further

24  violated [Plaintiff's] religious beliefs where, based on the

25  foregoing concerns as well as her religious needs for a clear

26  conscience as a Jehovah's Witness, she had reservations."  Pl.'s

27  Mot. at 15-16.

28      The Court finds that there is no genuine dispute that

10

1   Plaintiff's religious beliefs conflict with the "true faith and

2   allegiance" provision.  Plaintiff's expert Dr. Schmalz opined

3   that "the requirement to 'bear true faith and allegiance'

4   presents a conflict with a typical Jehovah's Witness' most basic

5   loyalty to Jehovah God — a fundamental precept guiding Watchtower

6   belief and practice."  Schmalz Decl. ¶ 71.  He therefore

7   concluded that "Plaintiff's approach to the Oath is

8   characteristic of how all or substantially all Jehovah's

9   Witnesses would approach the matter."  Id. ¶ 74.  Plaintiff also

10  testified she can "uphold" bearing allegiance to the federal

11  and state constitutions, but her "primary allegiance can't be to

12  anything or anyone except for God."  Bolden-Hardge Dep. 167:12-

13  16; see also id. 169:6-10 ("I still need to make sure that my

14  primary allegiance is always to God.").  Moreover, as the Ninth

15  Circuit observed, "Jehovah's Witnesses have repeatedly challenged

16  similar oath requirements as inconsistent with their religious

17  beliefs."  Id. at 1223 n.5.  For example, a court in this

18  District held that the religious beliefs of a Jehovah's Witness

19  conflicted with the Oath's "true faith and allegiance" provision.

20  Bessard v. California Cmty. Colleges, 867 F. Supp. 1454, 1462

21  (E.D. Cal. 1994).  This evidence and caselaw establish that

22  Plaintiff's beliefs reflect an "honest conviction."  See Bolden-

23  Hardge, 63 F.4th at 1223.

24      In response, Defendants present two arguments.  First, they

25  state that Plaintiff's conflict was not an "honest conviction"

26  because she had worked in state government for six years without

27  renouncing her religion, including when she signed the Oath

28  without accommodation in 2011.  Defs.' Reply at 6.  This evidence

1  does not demonstrate that Plaintiff's conviction was dishonest.

2  Indeed, when Plaintiff was presented with the Oath in 2011, she

3  expressed concerns to an FTB employee.  Bolden-Hardge Dep. 46:9-

4  48:18.  Plaintiff was told "get the paperwork done" and sign the

5  Oath.  Id.  Plaintiff represents that because there were at least

6  20 other new employees in the room with her and everyone had to

7  complete many forms, she "just completed the paperwork."  Id.

8  Accordingly, the context around Plaintiff signing the Oath in

9  2011 underscores the honesty of her conviction that there are

10  conflicts between her religious views and the Oath.

11       Defendants' second argument is that the federal oath and

12  other state oaths involve similar language to California's oath,

13  such that workers "do not relinquish their religion, but they do

14  need to commit to follow the law."  Defs.' Mot. at 17.

15  Defendants further contend that Plaintiff conceded the Oath did

16  not state "primary" allegiance, which Defendants suggest means

17  there is no conflict between her religious beliefs and the Oath.

18  Id. at 4.  However, these arguments would require the Court to

19  consider whether it was reasonable for Plaintiff to believe that

20  there was a conflict between her religion and the Oath.  The

21  Ninth Circuit, and the Supreme Court precedent upon which it

22  relied, clearly held that the Court cannot second-guess the

23  reasonableness of Plaintiff's alleged conflict.  See Bolden-

24  Hardge, 63 F.4th at 1223.  Rather, the Court only assesses

25  whether Plaintiff has presented an "honest conviction," which the

26  undisputed evidence establishes she has done.

27       Because it is undisputed that Plaintiff communicated this

28  conflict to Defendants, and that Defendants rescinded Plaintiff's

1   job offer because she would not sign the Oath without

2   accommodation, Plaintiff has established a prima facie case of

3   failure to accommodate.  See Heller, 8 F.3d at 1438; Bolden-

4   Hardge Dep. 76:24-78:21; Gleiberman Decl., Exs. 1E, 1F.  As such,

5   the Court need not analyze Plaintiff's other alleged conflicts.

6   See Bolden-Hardge, 63 F.4th at 1224.

7                      b.   Undue Hardship

8        The burden of proof shifts to Defendants to establish they

9   "could not reasonably accommodate the employee without undue

10  hardship."  See Lawson, 296 F.3d at 804.  To establish an undue

11  hardship, "an employer must show that the burden of granting an

12  accommodation would result in substantial increased costs in

13  relation to the conduct of its particular business."  Groff v.

14  DeJoy, 600 U.S. 447, 470 (2023).  Defendants do not present

15  sufficient evidence to allow a jury to find that the Proposed

16  Addendum constituted an undue hardship.

17       Defendants first argue that it would suffer a hardship "due

18  to deviation from the public's lawful expectations" because the

19  public expects state officials to follow the law, which is an

20  expectation facilitated by the Oath.  Defs.' Mot. at 19-21.  But

21  Plaintiff's accommodation included her signing the Oath, and

22  nothing in the Proposed Addendum would undermine the public's

23  expectation that she would follow the law.  As such, Plaintiff

24  signing the Oath and attaching the Proposed Addendum would not be

25  a deviation from the public's expectations.

26       Defendants next assert that they would suffer a hardship if

27  they allowed employees to write their own oath.  Defs.' Mot. at

28  22.  Defendants rely on the California appellate opinion in Smith

1  v. County Engineer of San Diego County, where the court rejected

2  an employee's attempt to add an addendum to the Oath that said,

3  "I take this oath, pledging my loyalty and allegiance to my

4  country, but declaring my supreme allegiance to the Lord Jesus

5  Christ Whom Almighty God has appointed ruler of Nations, and

6  expressing my dissent from the failure of the Constitution to

7  recognize Christ and to acknowledge the Divine institution of

8  civil government." 266 Cal. App. 2d 645, 648 (1968). Smith does

9  not aid Defendants. First and foremost, the Smith court was not

10 considering whether federal law — much less Title VII — required

11 an accommodation, and thus Smith is inapposite from the present

12 action. However, even if Smith were on point, the addendum there

13 was categorically different from the Proposed Addendum here. The

14 Smith court rightfully held that the employee's addendum was

15 "gratuitously injecting his religious beliefs into the

16 governmental process, the very subject into which the organic law

17 forbids inquiry by government." See id. at 656. Plaintiff's

18 Proposed Addendum, on the other hand, only seeks to clarify the

19 Oath's meaning and is not "gratuitously injecting [Plaintiff's]

20 religious beliefs into the governmental process." See id.

21      Defendants also posit that the only reasonable accommodation

22 available for a religious belief is the ability to "affirm" an

23 oath rather than "swear" it. Defs.' Mot. at 23. But Plaintiff's

24 conflict is not with swearing an Oath; rather, her conflict lies

25 with the contents of the Oath itself. Moreover, Defendants'

26 contention is unsupported by law. Because the Ninth Circuit in

27 this case already held that Plaintiff pleaded a plausible Title

28 VII claim, it implicitly held that federal law allows for

14

1  reasonable accommodations other than affirming the Oath.  See

2  Bolden-Hardge, 63 F.4th at 1222 n.4.

3       Defendants' final argument is that they would experience

4  hardship "due to the impact on other employees" because granting

5  Plaintiff's requested accommodation would require them to violate

6  the law and, therefore, their oaths.  Defs.' Mot. at 21-22.  To

7  support this position, Defendants submit the declaration of

8  Gerard Anderson, a Defendant in this action, because he is the

9  Chief of HR at SCO.  See id. at 22.  Anderson states that because

10 SCO determined it could not accommodate Plaintiff, he "felt that

11 granting Plaintiff's request" would violate his "oath to uphold

12 the law."  Anderson Decl. ¶ 5, ECF No. 94.  However, Defendants'

13 contention is not grounded in the law.  The California

14 Constitution only states that public officers and employees

15 "shall" take the Oath before entering office.  Cal. Const. art.

16 XX, § 3.  Defendants point to no legal authority — in the state

17 constitution or elsewhere — that SCO is prohibited from allowing

18 Plaintiff to attach the Proposed Addendum.

19      Defendants' argument is further weakened by the practice of

20 other state agencies.  Indeed, after SCO rescinded her job offer,

21 Plaintiff returned to the FTB, which granted the exact request in

22 this case by allowing her to attach the Proposed Addendum to the

23 Oath.  Bolden-Hardge Decl. 57:1-58:9.  The State Personnel Board

24 also allows employees to "attach a statement" to a signed Oath

25 stating that their "religious beliefs prohibit their bearing

26 arms."  Gleiberman Decl., Ex. 22, ECF No. 55-22.  That other

27 state agencies allow employees to include addendums suggests that

28 such accommodation does not violate state law.

1    Even if the Proposed Addendum somehow violated state law,

2  the California Department of Human Resources — the agency tasked

3  with ensuring that other agencies administer the Oath to their

4  employees — does not have any policies or procedures to enforce

5  the Oath requirement.  Id., Ex. 7, Wheeler Dep. 29:14-18, ECF No.

6  55-7; id. Ex. 21, ECF No. 55-21.  The Ninth Circuit already held

7  that Defendants could not establish an undue hardship unless they

8  "provide evidence that [they] would in fact face liability for

9  accommodating" Plaintiff.  See Bolden-Hardge, 63 F.4th at 1226.

10  Because the agency responsible for enforcing the Oath requirement

11  does not take any steps to ensure compliance by all State

12  agencies, Defendants have failed to provide proof they would face

13  liability for accommodating Plaintiff.  See id.

14    Finally, even if the Court assumed that Defendants might

15  face liability for violating state law, they still would not meet

16  their undue hardship burden.  As the Ninth Circuit in this case

17  explained, exempting employers from a federal accommodation

18  requirement "solely because the requested accommodation would

19  violate state law would essentially permit states to legislate

20  away any federal accommodation obligation, raising Supremacy

21  Clause concerns."  Bolden-Hardge, 63 F.4th at 1225 (emphasis

22  original).

23    Accordingly, the undisputed evidence shows that Defendants

24  would not have experienced an undue hardship if Plaintiff had

25  been allowed to attach the Proposed Addendum and sign the Oath,

26  as she requested.  The Court grants Plaintiff's motion and denies

27  Defendants' cross-motion as to the Title VII failure to

28  accommodate claim.

1              3.    Disparate Impact

2       Both parties move for summary judgment as to Plaintiff's

3  disparate impact claim under Title VII.  FAC ¶¶ 74-80.  To

4  establish a prima facie case of disparate impact, a plaintiff

5  must: "(1) show a significant disparate impact on a protected

6  class or group; (2) identify the specific employment practices or

7  selection criteria at issue; and (3) show a causal relationship

8  between the challenged practices or criteria and the disparate

9  impact."  Hemmings, 285 F.3d at 1190 (citation omitted).  If a

10  plaintiff establishes a prima facie case, then the burden shifts

11  to the employer to "demonstrate that the challenged practice is

12  job related for the position in question and consistent with

13  business necessity."  42 U.S.C. § 2000e-2(k)(1)(A)(i).

14       In this case at the motion to dismiss stage, the Ninth

15  Circuit held that Plaintiff did not need to provide statistics

16  demonstrating a disparate impact because her allegations — which

17  were accepted as true for purposes of the motion — included that

18  the Oath requirement impacted "all or substantially all"

19  Jehovah's Witnesses seeking state employment.  Bolden-Hardge, 63

20  F.4th at 1228.  At the summary judgment stage, while Plaintiff

21  does not necessarily have to provide statistical evidence, she

22  does need to provide evidence that the disparate impact is

23  "obvious" such that it impacts "all or substantially all"

24  Jehovah's Witnesses.  See id.

25       Dr. Schmalz's opinions are the only evidence before the

26  Court that concern how a typical Jehovah's Witness would

27  interpret the Oath.  He stated that the requirement to sign an

28  oath with the "true faith and allegiance" provision "would

17

1  violate the sincerely held religious beliefs of Jehovah's Witness

2  as a group."  Schmalz Decl. ¶ 34.  Dr. Schmalz furthered that

3  "the requirement to 'bear true faith and allegiance' presents a

4  conflict with a typical Jehovah's Witness' most basic loyalty to

5  Jehovah God — a fundamental precept guiding Watchtower belief and

6  practice."  Id. ¶ 71.  As such, he concluded that because

7  "Plaintiff's approach to the Oath is characteristic of how all or

8  substantially all Jehovah's Witnesses would approach the matter,"

9  "the categorical refusal by Defendants to provide accommodations

10  in the context of the Oath has the consequence of excluding

11  Jehovah's Witnesses as a group from public employment with the

12  State Controller's Office."  Id. ¶¶ 74-76.  Dr. Schmalz added

13  that allowing a Jehovah's Witness to sign the Oath with the

14  Proposed Addendum "would not conflict with the sincere religious

15  beliefs of . . . all or substantially all Jehovah's Witnesses as

16  a group."  Id. ¶ 79.  This evidence arguably supports Plaintiff's

17  argument that her conflict applies to "all or substantially all"

18  Jehovah's Witnesses such that a policy of administering an

19  unaccommodated Oath has an "obvious" disparate impact.  See

20  Bolden-Hardge, 63 F.4th at 1228.

21       As discussed above, Defendants challenge Dr. Schmalz's

22  opinions and conclusions as inadmissible.  While the Cout denied

23  Defendants' motion to strike portions of this evidence, it found

24  that there is a genuine issue as to how much weight it should be

25  given.  Any challenge that goes to the weight of evidence is

26  within the province of the fact finder, not the trial judge.

27  This Court may not make credibility determinations reserved for

28  the jury.  Pyramid Techs, 752 F.3d 807, 814.  There is a genuine

18

1    issue of material fact as to whether Plaintiff can make a prima

2    facie showing of disparate impact under Title VII.  Accordingly,

3    the Court denies both parties' motions for summary judgment on

4    this claim.

5         E.    Plaintiff's Section 1983 Claim is Untimely

6         The parties move for summary judgment as to Plaintiff's

7    Section 1983 claim for violation of the First Amendment.  FAC

8    ¶¶ 89-100.  Defendants argue that Plaintiff is time-barred from

9    bringing a Section 1983 claim.  Defs.' Mot. at 30.  The Ninth

10   Circuit held, "Claims brought under 42 U.S.C. § 1983 borrow the

11   forum state's statute of limitations for personal injury actions,

12   as well as the state's tolling rules . . . California's two-year

13   limitations period for personal injury actions . . . applies to

14   [plaintiffs'] § 1983 claims."  Holt v. Cnty. of Orange, 91 F.4th

15   1013, 1018 (9th Cir. 2024) (cleaned up).  Plaintiff learned on

16   August 4, 2017, that her job offer from SCO had been rescinded.

17   Bolden-Hardge Depo. 104:4-17.  Accordingly, Plaintiff needed to

18   commence action by August 4, 2019, to comply with the two-year

19   limitation period.  However, Plaintiff did not file suit until

20   October 19, 2020.  See Complaint, ECF No. 1.

21        Plaintiff does not contest that her claim is subject to a

22   two-year limitation period or that she failed to timely commence

23   action.  She argues, however, that the claim was tolled because,

24   on January 23, 2018, she initiated an Equal Employment

25   Opportunity Commission ("EEOC") proceeding by filing a complaint

26   with the California Department of Fair Employment and Housing.

27   See Pl.'s Opp'n at 19; Gleiberman Decl., Ex. 33, ECF No. 51-3.

28        Plaintiff ignores significant caselaw that all but

forecloses her argument.  The Supreme Court held that the filing

of an EEOC complaint does not toll the running of the statute of

limitations for a Section 1981 claim, which is a similar cause of

action to a Section 1983 claim.  Johnson v. Railway Express

Agency, 421 U.S. 454, 466 (1974).  The Court elsewhere held that

all causes of action under the Civil Rights Acts "exist

independent of any other legal or administrative relief that may

be available as a matter of federal or state law."  Burnett v.

Grattan, 468 U.S. 42, 50 (1984).  Relying on this precedent, the

Ninth Circuit held that the statute of limitations for a Section

1981 claim was not tolled during the pendency of a California

administrative claim.  London v. Coopers & Lybrand, 644 F.2d 811,

815 (9th Cir. 1981), overruled on other grounds by Lacey v.

Maricopa Cnty., 693 F.3d 896 (9th Cir. 2012).

District courts in this Circuit have applied this binding

precedent to Section 1983 claims.  For example, one district

court held, "There is thus no reason that the . . . statute of

limitations governing plaintiff's § 1983 claim should be tolled

while his EEOC proceeding was pending."  Reese v. City of

Emeryville Fire Dep't, 746 F. Supp. 987, 988 (N.D. Cal. 1990).

The Reese court explained, "To hold otherwise would grant

plaintiff the right to allege new causes of action continually,

each time asserting the pendency of the previous litigation as

tolling any limitations period applicable to the newly alleged

claim. Such a result would frustrate policies behind statutes of

limitations, which are intended both to encourage plaintiffs to

pursue all available legal remedies in a timely manner and to

ensure that defendants need not face the uncertainty of

1  indefinite liability." <u>Id.</u>  Other district courts have held that

2  an EEOC proceeding does not toll the limitation period for a

3  Section 1983 claim.  <u>See</u> <u>Sutton v. City & Cnty. of San Francisco</u>,

4  No. C 93-1120 BAC, 1993 WL 451506, at *2 (N.D. Cal. Oct. 28,

5  1993) (granting summary judgment to the defendant because Section

6  1983 claim was untimely, as it was not tolled during the pendency

7  of the plaintiff's EEOC proceeding); <u>Vorgias v. State Bar of</u>

8  <u>California</u>, No. C 05-5039 JF PVT, 2007 WL 295547, at *2 (N.D.

9  Cal. Jan. 30, 2007) (holding that an EEOC complaint did not toll

10 the limitation period for a Section 1983 claim).

11      The Court agrees that the statute of limitations for a

12 Section 1983 claim runs during the pendency of an EEOC

13 proceeding.  Because Plaintiff has no other argument for tolling

14 and concedes that her claim is otherwise untimely, the Court

15 grants Defendants' motion and denies Plaintiff's motion as to the

16 Section 1983 claim.

17      F.    <u>The Court Must Dismiss the Remaining Claims</u>

18            1.    <u>Fair Employment and Housing Act</u>

19      The parties move for summary judgment as to Plaintiff's

20 claim for violation of California's Fair Employment and Housing

21 Act ("FEHA").  Defendants correctly argue that this claim is

22 barred by the Eleventh Amendment.  Defs.' Mot. at 28.  The

23 Supreme Court held, "a claim that state officials violated state

24 law in carrying out their official responsibilities is a claim

25 against the State that is protected by the Eleventh Amendment."

26 <u>Pennhurst State Sch. & Hosp. v. Halderman</u>, 465 U.S. 89, 121

27 (1984) (citation omitted).  The Court furthered that "this

28 principle applies as well to state-law claims brought into

1   federal court under pendent jurisdiction."  Id.  While an

2   individual can sue a state employee for a FEHA violation in state

3   court, the Ninth Circuit held that "a statute consenting to suit

4   in state court does not constitute consent to suit in federal

5   court."  Fordyce v. City of Seattle, 55 F.3d 436, 441 (9th Cir.

6   1995) (citation omitted).  Accordingly, the Ninth Circuit held,

7   "California has not waived its immunity to FEHA actions in

8   federal court."  Freeman v. Oakland Unified Sch. Dist., 179 F.3d

9   846, 847 (9th Cir. 1999); see also Mack v. California Dep't of

10  Corr. & Rehab., 790 F. App'x 846, 848 (9th Cir. 2019) (holding

11  that the district court properly dismissed a FEHA claim against a

12  state agency because the claim was barred by sovereign immunity).

13      Plaintiff points out that Defendants did not raise this

14  issue at the motion to dismiss stage.  Pl.'s Opp'n at 7 n.4.

15  However, Defendants were not required to raise this issue in a

16  motion to dismiss.  See Doe v. Regents of the Univ. of

17  California, 891 F.3d 1147, 1152-53 (9th Cir. 2018) (holding that

18  defendant did not waive immunity by not raising the argument in a

19  motion to dismiss).  Moreover, because Defendants asserted this

20  affirmative defense, the argument was not waived.  See Answer at

21  24, ECF No. 34.

22      Plaintiff also contends that the Ninth Circuit allowed her

23  FEHA claim to proceed.  Pl.'s Opp'n at 7 n.4.  However, because

24  this issue was not previously raised, the Ninth Circuit did not

25  address it.  The Ninth Circuit held that Plaintiff "can seek

26  retrospective damages from the Controller's Office under FEHA

27  because state employers are likewise subject to suits for damages

28  under that state law."  Bolden-Hardge, 63 F.4th at 1221 (citing

1   DeJung v. Superior Ct., 169 Cal. App. 4th 533 (2008)).  The Ninth

2   Circuit did not, however, address whether this claim was barred

3   by the Eleventh Amendment.  Moreover, DeJung — the California

4   appellate case that the Ninth Circuit cited — only stands for the

5   proposition that public employers are liable for violations of

6   FEHA, and it does not state that California has waived its

7   immunity against FEHA actions in federal court.  See 169 Cal.

8   App. 4th at 545.

9       Accordingly, the Court does not have jurisdiction over the

10  FEHA claim.  The Court addresses below the proper disposition of

11  this claim.  See infra Opinion Part F.3.

12              2.   California Constitution

13      Defendants, but not Plaintiff, move for summary judgment as

14  to Plaintiff's claim for violation of the California

15  Constitution.  As Defendants observe, see Defs.' Mot. at 35, this

16  claim is also barred because "a claim that state officials

17  violated state law in carrying out their official

18  responsibilities is a claim against the State that is protected

19  by the Eleventh Amendment."  See Pennhurst State Sch., 465 U.S.

20  at 121.  Relying on Pennhurst State School, the Ninth Circuit

21  held that a federal court deciding state issues "would offend

22  federalism and does not further the interests of federal law."

23  Ulaleo v. Paty, 902 F.2d 1395, 1400 (9th Cir. 1990).

24  Accordingly, the Ninth Circuit affirmed the district court's

25  dismissal of "plaintiffs' pendent claims based on solely state

26  law and the state constitution."  Id.

27      Plaintiff does not address this specific argument.  See

28  Pl.'s Opp'n at 20, n.15.  By failing to respond to Defendants'

1  argument, Plaintiff concedes that this claim is barred.  See

2  Mariscal v. Graco, Inc., 52 F. Supp. 3d 973, 984 (N.D. Cal. 2014)

3  (granting summary judgment because the plaintiff conceded the

4  relevant claim by failing to address the defendant's arguments);

5  M.J.L.H. v. City of Pasadena, No. CV 18-3249-JFW(SSx), 2019 WL

6  2249545, at *4 n.9 (C.D. Cal. May 24, 2019) (same).  Accordingly,

7  the Court does not have jurisdiction over the California

8  Constitution claim.

9           3.   Dismissal is Mandatory as to Both Claims

10        Defendants request summary judgment as to the FEHA and

11  California Constitution claims.  Defs.' Mot. at 28, 35.  However,

12  because the Court lacks jurisdiction, it must dismiss the claims

13  rather than grant summary judgment.  In Freeman v. Oakland

14  Unified School District, the district court granted the

15  defendant's motion for summary judgment because the FEHA claim

16  was barred by the Eleventh Amendment.  No. C 96-1539 FMS, 1998 WL

17  310758, at *4 (N.D. Cal. June 8, 1998).  Upon appeal, though the

18  Ninth Circuit agreed that the claim was barred, it nonetheless

19  ordered "the district court to modify its decision to specify

20  that [the plaintiff's] FEHA claim is 'dismissed without

21  prejudice.'"  Freeman, 179 F.3d at 847.  The court explained that

22  because the "Eleventh Amendment is a limit on federal courts'

23  jurisdiction," a claim barred by the Eleventh Amendment must be

24  dismissed "without prejudice to it being re-filed in a court of

25  competent jurisdiction."  Id.

26  ///

27  ///

28  ///

24

1    Accordingly, as to the FEHA and California Constitution

2  claims, the Court dismisses them without prejudice.  As such, the

3  Court denies as moot the parties' cross-motions as to these

4  claims.

5                              III. ORDER

6    For the reasons set forth above, Defendants' Motion to

7  Exclude is DENIED WITHOUT PREJUDICE.  The Court also GRANTS IN

8  PART and DENIES IN PART Plaintiff's and Defendants' cross-motions

9  for summary judgment.  Specifically, the Court GRANTS Plaintiff's

10  motion and DENIES Defendants' motion as to the Title VII claim

11  for failure to accommodate.  The Court DENIES the parties cross-

12  motions as to the Title VII claim for disparate impact.  The

13  Court GRANTS Defendants' motion and DENIES Plaintiff's motion as

14  to the Section 1983 claim.  The claims brought under the

15  California Constitution and the Fair Employment and Housing Act

16  are DISMISSED WITHOUT PREJUDICE, and thus the parties' cross-

17  motions are DENIED AS MOOT as to these claims.

18    IT IS SO ORDERED.

19  Dated:  August 29, 2025

20

21  _____

22  JOHN A. MENDEZ
     SENIOR UNITED STATES DISTRICT JUDGE

23

24

25

26

27

28

                              25